UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DARYL STEPHEN,

                Plaintiff,

-against-

PUBLIC PARTNERSHIPS LLC,

                Defendant.

**MEMORANDUM AND ORDER**

25-CV-3895 (NRM) (LKE)

**NINA R. MORRISON**, United States District Judge:

Plaintiff Daryl Stephen, proceeding *pro se*, seeks a preliminary injunction in this action against his current employer, Public Partnership LLC. For the reasons discussed below, the motion for a preliminary injunction is **DENIED**.

## BACKGROUND

Plaintiff Daryl Stephen brings this action against his employer, Public Partnerships LLC ("PPL"). PPL is a fiscal intermediary for the Consumer Directed Personal Assistance Program ("CDPAP"), a New York Medicaid program that allows family members to serve as in-home caregivers. Am. Compl. ¶¶ 9–10, ECF No. 13.[1]

---

[1] The New York State Department of Health website explains that the Consumer Directed Personal Assistance Program "allows Medicaid members who are eligible for home care services to choose and hire their own personal caregiver, or 'personal assistant.'" *Consumer Directed Personal Assistance Program (CDPAP)*, N.Y. Dep't of Health, available at https://www.health.ny.gov/health_care/medicaid/program/longterm/cdpap/ (last visited Jan. 12, 2026).

Stephen has been employed by PPL as a CDPAP caregiver for a diabetic family member since April 1, 2025. *Id.* ¶¶ 11–12.

On July 14, 2025, Stephen commenced this action against PPL. Am. Compl. Stephen alleges that PPL's payroll system is inadequate in two main ways. First, Stephen alleges that PPL requires employees to record their hours through an electronic timesheet app (the "Electronic Visit Verification" or "EVV" system) that malfunctions regularly, leading to wage delays. *Id.* ¶¶ 13–16. Second, Stephen alleges that PPL enforces a "rigid weekly payroll cutoff at 11:59 p.m. Saturdays" that also leads to wages being delayed. *Id.* ¶ 16. As a result of the system malfunctions and weekly payroll cutoff, Stephen alleges, he has experienced "late wages and combined paychecks." *Id.* ¶ 17. Stephen alleges that these delays led to other harms, including delayed or reduced funding of medical and transportation benefits, missed or delayed prescriptions, approximately $500 in unspecified late fees, a missed rent payment in July 2025, and emotional damages. *Id.* ¶¶ 17–18a. Stephen claims that the wage delays violate the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), and constitute breach of contract, negligence, and intentional infliction of emotional distress. *Id.* ¶¶ 27–62. Finally, Stephen alleges that PPL retaliated against him in violation of the FLSA and NYLL by "cutting off technical support" and "[s]hifting all communications to Defendant's legal counsel" after he

brought this case. *Id* at ¶¶ 71–77. He seeks damages in an amount not less than $500,000, as well as declaratory and injunctive relief. *Id.* at 25–27.[2]

On September 24, 2025, Stephen moved for a preliminary injunction that would:

1) Requir[e] Defendant, within 30 days, to correct or provide a functional alternative to its defective EVV system;
2) Extend[] Defendant's payroll submission cutoff by at least 24 hours beyond 11:59 p.m. Saturday;
3) Allow[] caregivers the option of separate paychecks for late-recorded hours rather than bundled pay;
4) Adjust[] the [benefits plan] to provide rolling or pro-rata funding of benefits . . . when hours are delayed; and
5) Order[] Defendant to file quarterly compliance reports for one year, with the first due within 90 days.

Mot. for Prelim. Inj. ("PI Mot.") at 1–2, ECF No. 14.

In support of his motion, Stephen submitted a declaration in which he states that "on multiple dates in 2025," he encountered an error message when he attempted to log in to the EVV system, that "[e]ach time the EVV system failed, [his] hours were not processed on time, which delayed [his] wages and sometimes forced multiple weeks of pay to be bundled together," and that "[t]hese issues occur weekly." Decl. of Sep. 24, 2025, PI Mot. Ex. A at 2, 5, ECF No. 14-1. Stephen also declared that because his wages were "delayed or bundled," he suffered a denial of timely benefits funding, missed a student loan payment, missed or delayed filling prescriptions, lost approximately $50 in paid time off, and incurred an overdraft fee on his bank account. *Id.* at 4. In reply, Stephen submitted an additional declaration stating that an EVV

---

[2] Page numbers are given to the numbers generated by the Electronic Case Filing System ("ECF") unless otherwise stated.

3

malfunction on September 27 and September 28 delayed his wages until October 1, 2025. Decl. of Oct. 31, 2025, at 6, ECF No. 27.

PPL opposes the motion in full. Mem. in Opp'n to Mot. for Prelim. Inj. ("PI Opp'n"), ECF No. 23. In opposition to the proposed preliminary injunction, PPL relies on a declaration from Escalation Manager Bennedette Mendez. Mendez Decl., ECF No. 23-5. Mendez affirmed that there is no requirement that caregivers submit their time by 11:59 p.m. Saturday. *Id.* ¶ 11. Instead, there is a weekly payroll cutoff, such that hours worked before 11:59 p.m. Saturday count towards the week's pay, and hours worked after 12:00 am Sunday count towards the following week. *Id.* ¶¶ 14–15. Mendez additionally alleges that Stephen's delayed wages resulted not from system malfunctions but from his own failure to timely submit his timesheets. *Id.* ¶¶ 16–21. In any case, Mendez states, there are at least four mechanisms for caregivers to submit their hours. *Id.* ¶ 22. Finally, Mendez claims, there is "no outstanding payment amount owed to [Stephen]." *Id.* ¶ 27. Therefore, PPL argues, Stephen has neither shown that he faces irreparable, imminent harm, nor that he is likely to succeed on the merits. PI Opp'n at 7–17. PPL also argues that the requested injunction would not be in the public interest; that the balance of equities weighs against the requested injunction; and that Stephen has failed to add a necessary party, namely the person receiving home health care (the "Consumer"). *Id.* at 17–24.

## STANDARD OF REVIEW

Stephen seeks a preliminary injunction under Fed. R. Civ. P. 65(a). A preliminary injunction "is an extraordinary and drastic remedy, one that should not

4

be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). A plaintiff seeking a preliminary injunction must establish the following elements:

> (1) [I]rreparable harm; (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party; and (3) that a preliminary injunction is in the public interest.

*New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (citation modified). Additionally, when a movant seeks a mandatory injunction that "will alter, rather than maintain the status quo . . . the moving party must show a clear or substantial likelihood of success." *Beal v. Stern*, 184 F.3d 117, 122–23 (2d Cir. 1999) (citation modified). Such a movant must also "make a strong showing of irreparable harm" and that "the preliminary injunction is in the public interest." *Actavis PLC*, 787 F.3d at 650 (citations omitted).

## DISCUSSION

### I.  Irreparable Harm

The Second Circuit has "described a showing of irreparable harm as the *sine qua non* for preliminary injunctive relief." *USA Recycling, Inc. v. Town of Babylon*, 66 F.3d 1272, 1294–95 (2d Cir. 1995). That is because the "purpose of a preliminary injunction . . . is only to preserve the status quo by preventing during the pendency of the suit the occurrence of that irreparable sort of harm which the movant fears will occur." *Kane v. De Blasio*, 19 F.4th 152, 163 (2d Cir. 2021) (citation modified). Thus,

5

"the moving party must first demonstrate that irreparable harm would be likely . . . before the other requirements for the issuance of a preliminary injunction will be considered." *JBR, Inc. v. Keurig Green Mountain, Inc.*, 618 F. App'x 31, 33 (2d Cir. 2015) (citation modified) (quoting *Rodriguez ex rel. Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1998)).

Here, although the cause of the alleged wage delays is contested, the parties agree that payment of Stephen's wages is sometimes delayed from one week to the next. *See* Mendez Decl. ¶ 20 (explaining that "[t]ime submissions that are entered past the payroll submission deadline cannot be processed for payment until the following payroll period"); *id.* ¶ 15 (explaining that hours worked after 12:00 a.m. Sunday are "considered part of the next work week for payroll purposes"); Decl. of Sep. 24, 2025 ¶ 6 (claiming that EVV malfunctions "sometimes forced multiple weeks of pay to be bundled together"). Stephen argues that such wage delays have resulted and will continue to result in irreparable harms. Decl. of Sep. 24, 2025 ¶¶ 9–11. In particular, he claims that wage delays led to a missed student loan payment, forced him to delay filling a prescription, caused him to lose about $50 in paid time off, and led to an overdraft fee on his bank account.[3]  *Id.* ¶ 11. Stephen supports his declaration with exhibits. First, he submits a student loan account balance statement in his name, dated May 20, 2025, which shows a regular monthly payment amount

---

[3] In his reply, Plaintiff also argues that the wage delays threaten his housing and employment stability. Pl. Reply in Support of Prelim Inj. ("PI Reply"), ECF No. 27 at 3. Because these statements are unsworn, the Court does not accord them evidentiary weight at this stage.

6

of $51.28, a next payment date of June 11, 2025, and an "amount already paid for this month" of $0.00.  PI Mot Ex. B at 12, ECF No. 14-1.  The student loan balance statement does not list a missed payment.  *Id.*  Second, he submits a document showing a $34 overdraft fee dated August 20, 2025, on a bank account in his name.  PI Mot. Ex. B-1 at 15, ECF No. 14-1.  Third, he submits a benefits plan document describing the PPL Flex Benefit Plan, which "provides [employees] with a benefit card . . . that is funded with money each month" that can be used for medical expenses, cell phone bills, transit, and more.  Benefits Plan, PI Mot. Ex. X at 21, ECF No. 14-1.  Although the Amended Complaint alleges that benefits are "based on reported hours," Am. Compl. ¶ 18, the plan document does not state whether or how benefits funding is affected by when wages are paid, Benefits Plan.

PPL argues that Stephen's motion should be denied because the alleged harms — delayed wages and benefits — are, by definition, money damages and compensable at law.  PI Opp'n at 15.  "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances."  *Faiveley Transp. Malmo AB v. Wabtec Corp.*, 559 F.3d 110, 118 (2d Cir. 2009) (citation omitted); *see also We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 294 (2d Cir. 2021) ("It is well settled . . . that adverse employment consequences are not the type of harm that usually warrants injunctive relief because economic harm resulting from employment actions is typically compensable with money damages.").  As the Second Circuit has held, "the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury."  *Jayaraj v. Scappini,*

7

66 F.3d 36, 39 (2d Cir. 1995) (quoting *Sampson v. Murray,* 415 U.S. 61, 90 (1974)) (vacating preliminary injunction barring city from terminating employee and finding that harms related to wrongful termination would not be irreparable).

However, that general rule is not without its exceptions. As relevant here, "when the outright denial or undue delay in the provision of subsistence benefits" — those that "provide for the most basic needs" — is at issue, courts have found irreparable harm. *Islam v. Cuomo,* 475 F. Supp. 3d 144, 153 (E.D.N.Y. 2020) (LDH) (finding irreparable harm for rideshare drivers seeking unemployment benefits); *see also Commc'ns Workers of Am. v. NYNEX Corp.*, 898 F.2d 887, 891 (2d Cir. 1990) (finding that termination of medical benefits threatened irreparable harm of denial of medical care). Where a plaintiff "has limited financial means and is living nearly paycheck to paycheck . . . even a small amount of lost income in one month" could lead to irreparable harm. *Vidal v. Advanced Care Staffing, LLC*, No. 22-CV-05535 (NRM) (MMH), 2023 WL 2783251, at *22 (E.D.N.Y. Apr. 4, 2023), *aff'd*, 2024 WL 980634 (2d Cir. Mar. 7, 2024).

Here, the overdraft fee on Stephen's bank account provides some support for his contention that he is living under conditions of financial insecurity. On the other hand, the Court notes that Stephen paid the $405 filing fee in this action on July 14, 2025, Filing Fee, ECF No. 2, and has not otherwise submitted evidence of his savings, income, or household expenses. At this stage, the Court cannot conclude that Stephen is living "paycheck to paycheck," *Vidal*, 2023 WL 2783251, at *22, such that the delays in his wages jeopardize his "basic needs," *Islam*, 471 F. Supp 3d at 153. This

8

conclusion is buttressed by the fact that Stephen waited over ten weeks after filing this action to move for a preliminary injunction. *Cf. Weight Watchers Int'l, Inc. v. Luigino's, Inc.*, 423 F.3d 137, 144 (2d Cir. 2005) ("We have found delays of as little as ten weeks sufficient to defeat the presumption of irreparable harm that is essential to the issuance of a preliminary injunction.") (collecting cases). Accordingly, Stephen has not shown that he will suffer irreparable harm if he is not granted preliminary injunctive relief, particularly in light of the general rule that where (as here) a plaintiff complains of injuries compensable through an award of money damages if he prevails, that standard is rarely met. Because the present record on Stephen's claimed financial insecurity is limited, however, the Court will also address Stephen's likelihood of success on the merits.

## II. Likelihood of Success on the Merits

Because Stephen requests a mandatory injunction that would alter the status quo, *see* PI Mot. at 1–2, it is his burden to show "a clear or substantial likelihood of success" on the merits. *Beal*, 184 F.3d at 123 (citation modified). The requested injunction must be denied because Stephen has not shown a likelihood of success on any of his claims.

### A. Alleged EVV System Malfunctions

As an initial matter, the Court finds that Stephen has not shown that PPL's alleged EVV system malfunctions prevent him from reporting his hours worked and being paid in a timely fashion. In a sworn statement, Stephen claims that "on multiple dates in 2025," he encountered an error message when he attempted to log

9

his time, each of which led to delayed wages, and that "[t]hese issues occur weekly." Decl. of Sep. 24, 2025 ¶¶ 3–5, 15.  Stephen also claims in a supplemental declaration that a malfunction in the timesheet app on September 27, 2025, and September 28, 2025, delayed his wages until October 1, 2025.  Decl. of Oct. 31, 2025, at 6.  To substantiate this alleged wage delay, Stephen includes two screenshots of the PPL EVV phone application, the first of which displays "in process payroll" for the weeks of April 27, 2025, and September 21, 2025, and the second of which displays "in-process timesheets" listing "no data found" under Stephen's name.  *Id.* at 8–9. Stephen argues that the screenshots "support[] the allegation of recurring portal synchronization failures described in Amended Complaint" and "demonstrate[] direct interference with payroll authorization for that week." *Id.* at 7.  The Amended Complaint, however, does not describe portal synchronization failures, and the paragraph to which Stephen refers describes delays caused by the Saturday 11:59 p.m. payroll cutoff.  *Id.* (citing Am. Compl. ¶ 16).  Moreover, because the screenshots are neither dated or timestamped, they do not prove either that the payroll cutoff led to delayed wages or that the EVV system experienced synchronization failures.

Meanwhile, PPL argues that any wage delays were caused by Stephen's own actions and has presented evidence to support that claim.  In a sworn declaration, Mendez attests that Stephen's delayed wages resulted solely from his own failure to timely submit the data necessary to process his wages, and that while PPL attempted to troubleshoot Stephen's issues with the EVV system, Stephen "failed to participate in productive dialogue."  Mendez Decl. ¶¶ 23–24.  Mendez also claims that PPL

10

maintains at least four different mechanisms for caregivers to submit their hours, *i.e.*, Stephen need not rely on the EVV system alone if he is having technical difficulties. *Id.* ¶ 22. Indeed, Stephen's timesheets show that he submitted his hours worked one to a few days late on several occasions. Timesheets, PI Opp'n Ex. 2, ECF No. 23-2. On some of those occasions, Stephen submitted his hours worked by paper and explained that he "did not have a phone or tablet." *Id.* At other times, Stephen submitted his hours manually and noted that "[t]he app was not working." *Id.* These timesheets corroborate Mendez's statement that PPL provides multiple timekeeping options to caregivers. Mendez Decl. ¶ 22. They also appear to show that Stephen was able to submit his hours manually within a day or two of performing the work after alleged system malfunctions. Accordingly, without prejudice to raising these claims later in the case, the Court finds that Stephen has not shown that EVV malfunctions prevent him from recording his hours.

B. <u>FLSA and NYLL Wage Delay Claims</u>

Stephen claims that the EVV system malfunctions and 11:59 p.m. Saturday cutoff lead to wage delays in violation of the FLSA and the NYLL.[4] Stephen is

---

[4] The Amended Complaint also alleges that Stephen was underpaid, but Stephen submits no sworn statement or other evidence to that effect in the instant motion. Although "[t]he admissibility of [evidence] goes to weight" at the preliminary injunction stage, *Mullins v. City of New York*, 626 F.3d 47, 52 (2d Cir. 2010), the allegations in the Amended Complaint are not evidence, *see Yupa v. Country Stone & Fence Corp.*, No. 14-CV-7384 (DRH), 2017 WL 27957, at *1 n.1 (E.D.N.Y. Jan. 3, 2017). Therefore, the Court accepts Mendez's statement that Stephen has been paid in full as uncontradicted and does not consider any underpayment claims at this time. Mendez Decl. ¶ 27.

11

unlikely to succeed on the merits that either the Saturday weekly rollover or the alleged EVV malfunctions violate the FLSA or the NYLL.

1. NYLL Wage Delays

The NYLL provides that employers of manual workers must pay employees weekly. NYLL § 191(1)(A)(i); *see also Gamboa v. Regeneron Pharms., Inc.*, 719 F. Supp. 3d 349, 351 (S.D.N.Y. 2024) (summarizing NYLL requirements). PPL concedes that Stephen is a manual worker as defined by the NYLL and therefore must be paid weekly, but argues that because Stephen's wage delays were self-inflicted, they do not violate the law. PI Opp'n at 20–21. The Court need not reach that issue, however, because even if true, the delays Stephen claims do not violate the provisions of the NYLL. In particular, the NYLL provides that manual workers must be paid "not later than seven calendar days after the end of the week in which the wages are earned." NYLL § 191(1)(A)(i). Here, Stephen does not submit any evidence from which the Court could conclude that EVV system malfunctions caused his payments to be delayed beyond seven days after the end of the week in which his wages were earned. *See* Decl. of Sep. 24, 2025 ¶ 6 (claiming that EVV malfunctions "sometimes forced multiple weeks of pay to be bundled together"); Decl. of Oct. 31, 2025, at 6 (claiming that wages were delayed between three and four days). Moreover, as Mendez explains, PPL pays caregivers weekly for all hours worked before midnight on Saturday, and any hours worked after that time are counted towards the following week's payroll. Mendez Decl. at 2. This payroll structure, which Stephen does not dispute, *see* Decl. of Sep. 24, 2025 ¶ 7, would not cause wages to be delayed more than

seven days after the end of the workweek in which they were earned. By contrast, the injunction Stephen requests — that PPL "process all hours submitted within one (1) day after the workweek ends for payment in the same weekly cycle," PI Reply at 4 — reaches beyond what the NYLL requires and is unlikely to succeed on the merits.

### 2. FLSA Wage Delays

Stephen also has not shown a likelihood of success on his claims brought under the FLSA. As PPL acknowledges, the FLSA includes an implicit prompt payment requirement. PI Opp'n at 18; *see also Rosenbaum v. Meir*, 658 F. Supp. 3d 140, 147 (E.D.N.Y. 2023) (clarifying that complaint "does not allege overtime claims in violation of the FLSA but rather contends Defendants violated the Act by failing to issue prompt payment."); *Rogers v. City of Troy*, 148 F.3d 52, 55 (2d Cir. 1998) (noting that courts have "long interpreted the statute to include a prompt payment requirement"). However, the Second Circuit has held that the prompt payment requirement does not bar an employer from adopting a payroll system that delays wages as much as two weeks, as long as it "(a) is [adopted] for a legitimate business reason; (b) does not result in an unreasonable delay in payment; (c) is intended to be permanent; and (d) does not have the effect of evading the FLSA's substantive minimum wage or overtime requirements." *Rogers*, 148 F.3d at 58; *see also id.* at 57 (approving lagged payroll system that "still yielded wages that conformed with the minimum wage and overtime provisions of the [FLSA]").

Here, Stephen has not submitted any evidence that either the 11:59 p.m. rollover or the EVV system were not adopted for a legitimate business reason, would

13

"result in an unreasonable delay" of wages, were not intended to be permanent, or would allow Defendant to evade the substantive provisions of the FLSA. *See id.* Even assuming Stephen had shown that his wage delays were caused by EVV system malfunctions, minor delays of one to a few days do not amount to a violation of the substantive provisions of the Act. *Cf. Coley v. Vannguard Urb. Improvement Ass'n, Inc.*, No. 12-CV-5565 (PKC) (RER), 2016 WL 7217641, at *12 (E.D.N.Y. Dec. 13, 2016) (finding plausible FLSA prompt payment claim where wages were chronically delayed and were delayed as much as twelve weeks). The same is true of a Saturday midnight rollover that causes hours worked after midnight to be paid in the following week's payroll. *See* Mendez Decl. ¶¶ 19–20. Thus, Stephen has not carried his burden of showing a likelihood of success on his FLSA claims.

    C.    <u>Breach of Contract and Implied Covenant of Good Faith and Fair Dealing</u>

Stephen argues that the wage delays violated a Memorandum of Understanding ("MOU") between the Consumer receiving CDPAP care and PPL. PI Reply at 2.[5] Stephen also asserts that he is a third-party beneficiary of that contract and may sue to enforce it. *Id.* PPL argues that Stephen is not a third-party beneficiary. PI Opp'n at 14–15. The Court need not resolve this question, however, because Stephen has not shown that PPL is in violation of the MOU.

---

[5] In his Amended Complaint, Stephen also argues that he was a third-party beneficiary of PPL's contract with the New York State Department of Health. Am. Compl. ¶¶ 40, 56–62. Stephen does not make that argument in the instant motion, and because PPL's alleged agreement with the Department of Health is not in evidence, the Court cannot assess his likelihood of success on it.

14

As relevant here, the MOU provides that PPL will "issu[e] paychecks to the consumer's [caregivers]." Mem. of Understanding at 4–5, ECF No. 23-3. The MOU does not set a payment time, and the delays Plaintiff alleges do not amount to a violation of any express or implied contractual obligation. Nor does Stephen provide any authority stating that payment delays of the kind he alleges amount to a violation of the duty of good faith and fair dealing. Therefore, he has not shown that he is likely to succeed on the merits of this claim.

> D. <u>Negligent and Intentional Infliction of Emotional Distress</u>

Stephen alleges that PPL's wage systems have caused negligent and intentional infliction of emotional distress. Am. Compl. ¶¶ 44–55. These claims are not likely to succeed on the merits.

The Court must construe Stephen's submissions "liberally" to "raise the strongest arguments they suggest." *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (citation omitted). Therefore, the Court construes Stephen's negligence claims to be based on PPL's alleged failure to maintain a functioning payroll system. However, as already discussed, Stephen has not carried his burden at this stage of showing that the EVV system is defective. Additionally, while Stephen alleges that he "suffered severe and ongoing emotional distress requiring psychological evaluation and treatment," and that he "intends to submit a forensic report" documenting these injuries, he has not provided any evidence of emotional distress in his motion. Am. Compl. ¶¶ 53–54. Nor has Stephen shown that PPL's conduct was "extreme and outrageous" as required to support a claim for intentional

15

infliction of emotional distress.  *See Higgins v. Metro-N. R. Co.*, 318 F.3d 422, 426 (2d Cir. 2003).  Accordingly, on the present record, Stephen is not likely to succeed on his claims for negligent and intentional infliction of emotional distress.

> E.    Retaliation

Finally, Stephen's retaliation claim is unlikely to succeed.  Stephen claims that PPL retaliated against him by informing him in an email that he was not entitled to seek troubleshooting assistance, and instead that "all further communications would go through PPL's legal counsel."  Decl. of Sep. 24, 2025 ¶¶ 12–14.  Stephen therefore seeks an immediate order that "PPL and its counsel shall not interfere with Plaintiff's ability to communicate with PPL's technical, payroll, and benefits support personnel" for the purpose of resolving wage payment issues.  PI Reply at 4.

The full email exchange, however, contradicts Stephen's version of events. After counsel for PPL asked Stephen to "cease and desist any communications directly to PPL regarding your lawsuit," Stephen informed defense counsel that he had refused several calls from a PPL representative regarding the EVV failures, which he said "appeared aimed at eliciting self-incriminating statements."  PI Opp'n Ex. 4 at 2, ECF No. 23-4.  Defense counsel then instructed Stephen to "[p]lease keep working with [technical support] to resolve [the issues with submitting your time]" and explained that "the only restriction is that you should not discuss the lawsuit directly with PPL."  *Id.* at 3.  Defense counsel followed up with another email to the same effect.  *Id.* at 4.  Counsel's emails directly contradict Stephen's claims that PPL

16

cut him off from technical support. Thus, Stephen's retaliation claim is not supported (and, indeed, appears to be refuted by) the evidence now before the Court.

## CONCLUSION

Because Stephen has not carried his burden of showing that any of his claims are likely to succeed on the merits, the preliminary injunction is **DENIED**.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is respectfully directed to mail a copy of this Order to *pro se* plaintiff Daryl Stephen and to note the mailing on the docket.

**SO ORDERED**.

*/s/ Nina R. Morrison*
NINA R. MORRISON
United States District Judge

Dated: January 22, 2026
 Brooklyn, NY