**UNITED STATES DISTRICT COURT EASTERN DISTRICT OF NEW YORK**

*** Filed *** 11:56 PM, 13 Apr, 2026 U.S.D.C., Eastern District of New York

**Daryl Stephen,**

Plaintiff,

v.                              **Civil Action No. 1:25-cv-03895-NRM-LKE**

**Public Partnerships, LLC d/b/a PPL First,**

Defendant.

————

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

**WITH DECLARATIONS AND EXHIBITS**

This filing packet contains:

1. **Plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss**

2. **Declaration A – Declaration of Daryl Stephen**

3. **Declaration B – Declaration of Daryl Stephen Regarding September 27–28, 2025 EVV / Portal Visibility Failure**

4. **Exhibit A-1**

5. **Exhibit A-2**

6. **Exhibit B-1**

7. **Exhibit B-2**

8. **Exhibit B-3**

9. **Exhibit B-4**

10. **Exhibit B-5**

11. **Exhibit C-1**

12. **Exhibit C-2**

13. **Exhibit D**

14. **Exhibit E**

15. **FAC Ex. X**

Dated: **April 13 2026**

Brooklyn, New York

**Daryl Stephen**

Plaintiff Pro Se

1316 Sterling Pl APT 1R

Brooklyn NY 11213

917-547-2145

DS027C@icloud.com

**EXHIBIT INDEX**

A clean index structure would be:

- **Exhibit A-1** – March 1, 2026 initial email re February 28, 2026 EVV access failure

- **Exhibit A-2** – March 1–5, 2026 follow-up email chain, including PPL cutoff/approval language

- **Exhibit B-1** – Caregiver-side screenshot showing submitted / awaiting approval

- **Exhibit B-2** – Caregiver-side screenshot showing entry in system

- **Exhibit B-3** – Consumer login context screenshot

- **Exhibit B-4** – Consumer-side "No Data Found" screenshot

- **Exhibit B-5** – Identification and explanation of Exhibit B screenshots

- **Exhibit C-1** – Pay record / pay stub relating to week ending February 28, 2026

- **Exhibit C-2** – Pay record / pay stub reflecting delayed payment for September 27–28, 2025 hours

- **Exhibit D** – July 28–29, 2025 counsel / communication materials

- **Exhibit E** – October 1, 2025 follow-up email

- **FAC Ex. X** – BasicWellness plan materials

One last formatting point: if you are filing this as one combined PDF, use **bookmarks** for:

- Cover Sheet
- Exhibit Index
- Opposition

- Declaration A

- Declaration B

- Each exhibit

**UNITED STATES DISTRICT COURT EASTERN DISTRICT OF NEW YORK**

**Daryl Stephen,**

Plaintiff,

v.                                    **Civil Action No. 1:25-cv-03895-NRM-LKE**

**Public Partnerships, LLC d/b/a PPL First,**

Defendant.

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff **Daryl Stephen**, proceeding **pro se**, respectfully submits this memorandum of law in opposition to Defendant **Public Partnerships, LLC's** motion to dismiss.

**PRELIMINARY STATEMENT**

Defendant's motion should be denied because it does not merely test the sufficiency of the pleading. It asks the Court to adopt Defendant's version of contested operational facts and to convert disputed explanations into pleading defects. The **First Amended Complaint** alleges recurring **EVV failures**, repeated notice to **PPL**, delayed and combined pay, delayed benefits tied to hours worked, and interference with meaningful troubleshooting after Plaintiff complained. Defendant responds by submitting declarations and selected records to argue

that all delay was caused by Plaintiff's own "late submission." That is not a proper **Rule 12(b)(6)** use of extra-pleading material.

The record itself shows conflict, not clarity. Plaintiff alleges that **PPL** enforced a rigid **Saturday 11:59 p.m. payroll cutoff**, that **EVV** repeatedly failed, and that those failures delayed wages and benefits. Plaintiff's later reply in support of preliminary relief added evidence that he submitted hours through **Time4Care**, but the consumer-facing portal displayed **"No Data Found,"** preventing approval and delaying payroll until **October 1, 2025**. Plaintiff also now alleges a later and distinct pre-cutoff access failure on **February 28, 2026**, when the historical login link returned a **"Bad Request"** error at **11:49 p.m.**, just minutes before the payroll cutoff. These facts undercut Defendant's effort to collapse the case into a simple "plaintiff submitted late" narrative.

As reflected in Plaintiff's stress test and research record, Defendant's reliance on **White, Newton, and Forrester** is misplaced because those authorities assume the existence of a **functional, reasonable reporting system**. Plaintiff here alleges the opposite: a system that repeatedly malfunctioned, created cross-portal visibility failures, denied pre-cutoff access, and functioned as a barrier rather than a tool. On Plaintiff's allegations, Defendant's preferred **"reasonable procedure" defense** is a disputed factual defense, not a pleading-stage defeat.

Defendant also overstates New York law. Although Defendant relies heavily on **Grant v. Global Aircraft Dispatch, Inc.**, the deeper **EDNY** picture reflected in Plaintiff's research record is more favorable to Plaintiff than Defendant admits. That record identifies no post-Grant **EDNY** decision dismissing a **§ 191** claim outright and identifies **Cooke, Levy, Jones, and Khan** as permitting **§ 191** claims to proceed notwithstanding the **Vega/Grant split**. At minimum, **Cozen's** position that **§ 191** is effectively dead in this Court is overstated. Plaintiff

acknowledges the split, but the law is unsettled enough in **EDNY** that dismissal at the pleading stage is unwarranted.

Plaintiff does not concede or waive any pleaded count. Some claims are stronger than others, but all are preserved. Plaintiff's principal opposition focuses on the **statutory wage claims**, Defendant's improper attempt to resolve disputed facts under **Rule 12**, Defendant's overreading of the **preliminary-injunction order**, and the curable nature of any **Rule 19** issue. To the extent the Court finds any claim insufficiently pleaded in its current form, dismissal with prejudice would be improper. **Rule 15** requires liberal amendment, and the proper course would be leave to amend, including if necessary to cure any joinder concern, refine damages theories, add further factual detail, and attach records uniquely held by Defendant.

## FACTUAL BACKGROUND

Plaintiff works as a **CDPAP caregiver** and alleges that **PPL** controlled payroll, timekeeping, **EVV** systems, and benefits administration tied to hours worked. Plaintiff alleges repeated **EVV** rejection despite proper credentials and further alleges that **PPL** rigidly enforced a weekly **11:59 p.m. Saturday cutoff** even though his caregiving duties regularly extended through that exact time.

Plaintiff's work is active, hands-on caregiving work for a diabetic patient and is not limited to passive observation or clerical tasks. His duties during a shift often include bathing assistance, grooming assistance, toileting, walking assistance, transferring, feeding help, repositioning, laundry, light housekeeping, nighttime bathroom trips, fall prevention, and keeping the patient safe in the home. His work also includes meal preparation, diabetic meal timing, hydration support, assistance with diabetes supplies, observation of symptoms associated with low or high blood sugar, documentation of events during the shift, and response to emergencies as

needed. His work may continue overnight when shifts begin on one day and continue into the next.

Plaintiff estimates that more than **40%** of his shift time consists of physical, hands-on caregiving labor, including lifting or steadying the patient, transferring, repositioning, toileting, bathing, dressing, nighttime bathroom assistance, fall prevention, feeding and hydration assistance, and other physical care tasks tied directly to the patient's diabetic condition and safety. These tasks are not incidental; they are central to Plaintiff's work and form a substantial portion of each shift.

Plaintiff further alleges that **EVV** failures and the cutoff caused delayed wages, combined paychecks, delayed or reduced access to **BasicWellness** benefits, delayed or reduced sick time and **PTO** accruals, and broader financial harm. The **BasicWellness** materials explain that benefits are tied to hours worked and are funded based on a two-month look-back, reinforcing Plaintiff's allegation that delayed hour processing can produce later benefit harm. The plan materials further indicate that eligible hours matter to benefit-month funding and administration, supporting Plaintiff's allegation that delayed wage processing was not harmless. See **FAC Ex. X**.

Plaintiff further alleges that hours worked before the **Saturday payroll cutoff** were, on specific occasions, not paid until approximately **10 to 11 days later**, rather than within the normal weekly cycle. Specifically, Plaintiff alleges that hours worked from **February 23–28, 2026**, which Plaintiff attempted to record before the cutoff, were not paid until **March 10, 2026**, and that hours for **September 27–28, 2025** were not paid until **October 9, 2025**. Plaintiff relies on those delayed pay cycles not as isolated bookkeeping issues, but as examples of the recurring wage-delay problem caused by **PPL's** timekeeping, access, approval, and processing failures.

Plaintiff's theory is that these examples are not merely hours worked after midnight rolling into the next cycle, but instances in which pre-cutoff hours were nevertheless delayed because of **PPL-controlled** reporting and processing failures. To the extent the Court requires greater specificity as to exact pay periods, payment dates, and supporting records, Plaintiff requests leave to amend and to attach the relevant payroll materials. See **Ex. C-1** and **Ex. C-2**.

The record also reflects repeated notice to **PPL** and its counsel. On **July 28, 2025**, Plaintiff warned counsel that continued **EVV** issues and the **Saturday cutoff** put him at risk of receiving a combined paycheck on **July 31** for the pay periods **July 13–19** and **July 20–26**. Counsel replied that **PPL** had "looked into this" and had been informed that the issue stemmed from Plaintiff "not submitting [his] time properly," while also stating that **PPL's escalation team** had been trying to work with Plaintiff. See **Ex. D**.

The next day, Plaintiff documented that a **PPL** staff member identified as **"Billy"** called him three times and asked detailed questions about clock-in methods, device used, phone number, timing of approvals, and alleged late submissions, even after Plaintiff stated he could not discuss matters related to the legal proceeding outside proper channels. Plaintiff requested that communications be in writing. See **Ex. D**.

Later, on **October 1, 2025**, Plaintiff documented that the **EVV** issue had only temporarily resolved, that he still relied on **exception processing**, and that wages and benefits were processed late. See **Ex. E**.

Plaintiff's reply in support of preliminary relief then added that for **September 27–28, 2025**, he submitted shifts through **Time4Care** and the entries appeared as awaiting consumer approval, but the consumer portal simultaneously displayed **"No Data Found,"** preventing approval and

delaying payment. The delayed payment was later reflected on the **October 9, 2025** check. See **Declaration B**; **Ex. B-1** through **Ex. B-5**; **Ex. C-2**.

Plaintiff also preserves a later and distinct **system-access failure** from **February 28, 2026**. In a written notice sent at approximately **1:20 a.m. on March 1, 2026**, Plaintiff told **PPL** that at approximately **11:49 p.m. ET on February 28, 2026**, he attempted to access the **EVV** login link he had historically used, **"pplathomeb2c.pplfirst.com,"** in order to submit hours before the **11:59 p.m. payroll cutoff**, but the link returned a **"Bad Request"** error and did not allow him to log in prior to the deadline. Plaintiff further stated that he was only able to access the system after **12:00 a.m.** by navigating through the main **PPL** website and locating a different login link. Plaintiff asked **PPL** to confirm in writing whether the **EVV login URL** had changed, whether notice of any URL change had been given to caregivers, and whether the submission would be treated as timely given the documented access failure before **11:59 p.m. PPL** did not directly answer those questions. Instead, **PPL** first responded by sending generic sign-in links, later repeated policy language about deadlines, and finally stated only that **"2/28/2026 payment is being processed from the payroll team,"** without providing the requested outage, notice, or metadata explanation. See **Declaration A**; **Ex. A-1**; **Ex. A-2**.

That **February 28** event is distinct from the earlier **September 2025 "No Data Found" portal mismatch**. The **September** event involved alleged caregiver-side submission with consumer-side invisibility. The **February 2026** event involved pre-cutoff access denial at the historical login endpoint itself, followed by after-midnight alternate access and delayed pay. Plaintiff relies on the later event not only as evidence of recurring system failure, but also as evidence that Defendant's present **"late submission"** framing is incomplete because, on Plaintiff's account, the delay followed a documented pre-cutoff access failure, followed by direct written questions that Defendant did not squarely answer.

Plaintiff has also executed a sworn declaration submitted herewith as **Declaration A**, detailing the **February 28, 2026 access failure**, including the timing of his pre-cutoff attempt, the **"Bad Request"** error, his after-midnight access through a different route, his immediate written notice, and Defendant's non-answers regarding any **URL change**, notice, or timely-treatment decision. That declaration is submitted not as a substitute for discovery, but to place a sworn, contemporaneous account of a distinct system-failure event before the Court. See **Declaration A**; **Ex. A-1**; **Ex. A-2**.

Plaintiff further supports these facts by sworn declaration rather than relying only on screenshots, while preserving the point that the most probative operational evidence remains in Defendant's possession, including **EVV logs**, outage or link-change records, visibility timestamps, payroll-processing timestamps, benefit funding records, and internal communications.

**STANDARD OF REVIEW**

On a motion under **Rule 12(b)(6)**, the Court must accept the complaint's well-pleaded factual allegations as true and draw reasonable inferences in the plaintiff's favor. **Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).** A complaint need only state a plausible claim, not prove it.

Although a court may in some circumstances consider documents attached to, incorporated into, or integral to the complaint, **Rule 12** does not permit the Court to resolve disputed facts against the pleader based on a defendant's preferred reading of declarations, screenshots, or

correspondence. Plaintiff's research record correctly identifies this as a central problem in Defendant's motion: **Cozen** repeatedly uses declarations and operational descriptions as if they settle causation, knowledge, and system functionality, when those are disputed matters requiring factual development.

The case-law summary Plaintiff relies upon further emphasizes that **Rule 12(b)(6)** is the wrong stage to resolve who caused late pay when the pleadings and exhibits themselves show system issues and notice. Defendant's reliance on declarations to "prove" that the system worked, that Plaintiff was late, and that any delay was his own fault is precisely the kind of **fact-finding** that **Rule 12** prohibits.

That is precisely what Defendant attempts here. Defendant asks the Court to accept contested propositions about how **EVV** worked, when **PPL** had notice, whether Plaintiff had meaningful alternatives, whether the **Saturday rollover** caused lawful or unlawful delay, and whether counsel's involvement hindered support. Those are **merits questions**, not pleading defects.

**ARGUMENT**

**I. COZEN OVERSTATES THE LAW ON NYLL § 191, ESPECIALLY IN EDNY**

Defendant's briefing presents **Grant** as though it effectively ends **§ 191** litigation in this Court. That is not an accurate description of the present **EDNY** landscape reflected in Plaintiff's research record.

That record states that no post-Grant **EDNY** decision was found that dismissed a **§ 191** claim outright, and identifies **Cooke, Levy, Jones, and Khan** as permitting **§ 191** claims to proceed.

It further states that **EDNY** judges generally acknowledge the **Vega/Grant split** and proceed under **Vega's** logic rather than treating **Grant** as dispositive.

That does not mean Plaintiff ignores **Grant**. Plaintiff acknowledges the split. But **Cozen** overstates matters when it suggests that **Grant** alone compels dismissal here. Plaintiff's research record further explains that the **2025 amendments** did not eliminate the claim itself, but instead curtailed remedies, especially **liquidated damages**, leaving at least an **interest-only fallback** where appropriate. Plaintiff expressly preserves that remedy theory.

Thus, even if the Court were ultimately to agree with Defendant on the scope of damages, that would not justify framing **§ 191** as categorically unavailable at the pleading stage. At minimum, the law is unsettled enough in **EDNY** that Plaintiff's **§ 191** claim should not be dismissed based on Defendant's one-sided account of the current legal landscape.

## II. DEFENDANT IMPROPERLY ATTEMPTS TO RESOLVE DISPUTED FACTS UNDER RULE 12(b)(6)

Defendant's motion rests on a factual premise, not just a legal one: that any wage delay was caused solely by Plaintiff's own late submission of hours. But Plaintiff alleges something materially different — recurring **EVV malfunction**, visibility failures between the caregiver and consumer portals, repeated notice, access failures, and support breakdowns that caused or materially contributed to delayed pay.

The **Mendez materials** do not eliminate that conflict. They offer **PPL's timestamps** and **PPL's explanation** of what those timestamps mean. But that does not answer why the entries were late, whether system malfunction contributed, whether support was adequate, or whether **PPL**

already had actual or constructive notice of the underlying hours and problems. As Plaintiff's research repeatedly notes, this is the core **Rule 12** problem with Defendant's motion: it tries to convert contested **causation** into a pleading defect.

The uploaded case-law summary reinforces that **PPL's best reporting-procedure cases** such as **White, Newton, and Forrester** generally assume a working, reasonable reporting system and no real evidence of employer-side malfunction or knowledge — precisely what Plaintiff disputes here. The existence of multiple nominal pathways, such as **EVV, website entry, or paper exceptions**, does not defeat the complaint where Plaintiff alleges those pathways were malfunctioning, inaccessible, delayed in practice, or dependent on exception processing that itself caused delay.

Plaintiff's record creates at least a plausible factual dispute. Counsel was warned in advance on **July 28, 2025** of the risk of a combined paycheck because of continuing **EVV** issues and the **Saturday cutoff**. Plaintiff later documented that hours became visible only after delay and had to be processed through **exception procedures**. Plaintiff's reply in support of preliminary relief described the **"No Data Found"** mismatch between the caregiver-facing and consumer-facing sides of the system. Plaintiff also now preserves a later and separate **February 2026 access failure** involving a **"Bad Request"** response before the cutoff and a delayed payday thereafter.

The **March 1–5, 2026 email chain** reinforces that Defendant's **"late submission" framing** is at best partial. Plaintiff gave contemporaneous written notice that he attempted access before the cutoff and was blocked by a **"Bad Request"** response at the historical login endpoint. Rather than answer whether there had been a **URL change, outage, or notice failure**, **PPL** responded with generic sign-in links, repeated deadline policy language, and eventually stated

only that the **February 28 payment** was **"being processed from the payroll team."** These communications highlight why the causation issue is factual: Plaintiff says he was forced into after-midnight submission by access failure, while Defendant seeks to characterize the result as mere user lateness. **See Declaration A; Ex. A-1; Ex. A-2.**

The core factual disputes Defendant raises depend on records uniquely within **PPL's possession**, including **EVV logs, outage or link-change records, payroll-processing timestamps, approval visibility records, benefit-funding records, and internal communications** regarding Plaintiff's account. Defendant should not be permitted to seek dismissal by relying on its own account of those records while withholding the operational records necessary to test that account. That information asymmetry matters here because the Court has already signaled the need for tighter proof of system malfunction and wage timing, yet the most probative proof sits with Defendant, not Plaintiff.

Those allegations may ultimately be proved or disproved, but they cannot be dismissed merely because Defendant supplies a declaration telling a different story.

## III. THE MENDEZ DECLARATION CANNOT RESOLVE DISPUTED FACTS AT THE PLEADING STAGE

Defendant relies heavily on the **Mendez declaration** and related materials, but they cannot do the work Defendant assigns to them.

Even taking them at face value, they show only that **PPL** recorded certain submissions on certain dates and that **PPL** says late-entered submissions roll into the next payroll cycle. That does not resolve the central issues in dispute: why the entries were late, whether **EVV or portal**

**malfunction** contributed to that timing, what **PPL** knew and when, whether access failed before a cutoff, and whether **PPL** provided meaningful technical support.

**Mendez** describes timestamps from **PPL's own records**, but does not resolve why those timestamps occurred. **Mendez** does not eliminate the possibility that **EVV malfunction, portal mismatch, access failure, or inadequate support** caused the lateness. **Mendez** does not resolve what **PPL** knew, when it knew it, or whether its own systems prevented timely completion. At **Rule 12**, Defendant cannot transform its own internal account of disputed events into conclusive pleading-stage fact.

Plaintiff's materials identify this as one of the strongest **anti-Mendez** points: the declaration is being used as if it were neutral fact-finding, when it is actually **PPL's own narrative** about contested events. The uploaded case-law summary likewise emphasizes that **Rule 12** is not a fact-finding vehicle and that the question is not whose factual story is more persuasive, but whether Plaintiff's pleaded story is plausible.

That is especially true here, where Plaintiff's own record shows repeated notice to **PPL** and **Cozen**, ongoing support breakdowns, and system-side approval visibility issues. The **July 28–29, 2025 email chain** undercuts any clean **"no notice / no cooperation"** story. The **October 1, 2025 follow-up** undercuts any claim that the issue was truly fixed. The **September 27–28, 2025 portal mismatch** undercuts any simple **"user error"** framing. The **March 2026 email chain** reflects a scripted-response loop rather than a meaningful investigation.

The **February 28–March 5, 2026 email chain** also bears on the credibility and completeness of Defendant's account. Plaintiff did not merely complain after missing a deadline. He reported, in writing and with a specific timestamp, that he attempted access before the **11:59 p.m.**

**cutoff** and received a **"Bad Request"** error at the historical login endpoint. Plaintiff then asked Defendant to state in writing whether the **URL had changed**, whether notice had been given, and whether his documented pre-cutoff attempt would be treated as timely. Defendant did not directly answer those questions. That response pattern supports the inference that Defendant's current **"late submission" narrative** is at least incomplete and that the underlying facts cannot be resolved on Defendant's say-so at the pleading stage. **See Declaration A; Ex. A-1; Ex. A-2.**

At most, **Mendez** presents one version of disputed operational events. That is not enough to defeat the complaint at the pleading stage.

**IV. THE JANUARY 22, 2026 PRELIMINARY INJUNCTION ORDER DOES NOT RESOLVE THE MERITS**

Defendant should not be permitted to repurpose the Court's **January 22, 2026 order denying preliminary relief** into a **Rule 12 merits ruling**.

The Court denied the preliminary injunction principally because Plaintiff had not shown **irreparable harm** on the emergency record before it, emphasizing that delayed wages and related harms were generally compensable by money damages, that the present record of financial insecurity was limited, and that Plaintiff waited over ten weeks after filing the action to move for preliminary relief.

The Court also found that, on the **PI record** then before it, Plaintiff had not shown that the alleged **EVV malfunctions** prevented him from timely reporting hours and noted that certain screenshots were not **dated or timestamped** and therefore did not prove the claimed **portal**

**synchronization failures**. The Court further analyzed **likelihood of success** under the heightened **PI standard**, not under **Rule 12(b)(6)**.

That matters. A denial of emergency relief on a limited and evidence-specific record does not convert Defendant's operational narrative into established fact for pleading purposes. The preliminary-injunction ruling addressed whether Plaintiff had made the heightened showing required for emergency relief on the record then presented; it did not hold that Defendant's account of the **EVV system, reporting process, or wage timing** had been conclusively established for all later purposes.

The **September 2025 portal-visibility event** and the **February 2026 "Bad Request" access event** are also not the same fact pattern. The former involved alleged caregiver-side submission with consumer-side invisibility; the latter involved pre-cutoff access failure at an official login endpoint, followed by after-midnight alternate access and delayed pay. Because the later event is distinct, Defendant cannot dismiss it as merely repackaged **PI proof**.

While the Court previously noted the absence of **timestamped screenshots** for some **PI purposes**, the current pleading now identifies **specific dates, specific event types, and specific late-payment timing examples**, materially sharpening the factual basis of Plaintiff's claims and distinguishing this opposition from the earlier **PI record**.

Plaintiff does not seek to relitigate the **PI motion** here. Plaintiff seeks only to ensure that Defendant cannot use that order as an all-purpose substitute for **Rule 12 analysis**.

**V. PLAINTIFF'S STATUTORY WAGE CLAIMS SURVIVE**

**A. FLSA Prompt-Payment Theory**

Plaintiff's research treats the **FLSA prompt-payment theory** as fact-dependent but viable where concrete facts show timely or attempted timely submission and delayed payment once the employer knew or should have known of hours worked.

Plaintiff alleges exactly that kind of theory: repeated **EVV malfunction**, repeated notice, system visibility failures, access failures, delayed pay, combined checks, and resulting delay in related benefits. Defendant's answer is that **PPL** had a reasonable system and that all delay stemmed from Plaintiff's own failure to use it properly. But that is a **factual defense**, not a pleading-stage defeat.

Plaintiff's theory is not that any payroll lag automatically violates federal law. It is that **PPL's payroll lag became unreasonable** because Plaintiff attempted timely compliance, repeatedly gave notice of **EVV and access failures**, and alleges that pre-cutoff hours were nevertheless delayed by malfunctioning or inaccessible system pathways controlled by **PPL**. The uploaded case-law summary makes the same distinction: **PPL's reliance on White, Newton, Forrester, and similar authorities** is incomplete because those cases generally involved summary-judgment records, functioning reporting systems, and no real evidence of employer-side malfunction or knowledge.

Defendant may invoke cases allowing some payroll-processing flexibility, but those cases do not establish that any delay under two weeks is automatically lawful. They generally assume that the employer's reporting and payroll systems are functional and that the delay is attributable to ordinary administrative processing rather than employer-controlled malfunction. Here, Plaintiff alleges the opposite: repeated **EVV failures, portal invisibility, pre-cutoff**

**access denial, and written notice** to Defendant. On those allegations, the **"reasonable procedure"** and **"ordinary processing"** defenses cannot defeat the complaint at **Rule 12**.

The same summary also notes that **Rogers v. City of Troy** reaffirms an implicit **FLSA prompt-payment obligation**, while **Parker, Avalos, and similar authorities** concern situations where wages could not be calculated for reasons not attributable to employer-side system failure. Here, Plaintiff alleges that wages were known or knowable and that the delay stemmed from **PPL-controlled reporting and access failures**, not a genuine inability to calculate. An employer cannot hide behind a **"reasonable procedure" defense** where its own system allegedly failed to function, nor can it claim a legitimate business reason for a rigid cutoff that remained in place even when the historical login endpoint allegedly returned a **"Bad Request"** error immediately before the deadline.

Whether **PPL's reporting structure** was genuinely reasonable in operation, whether the alternatives were meaningful, whether the **Saturday rollover** and related processes caused delay, and whether **PPL** had actual or constructive knowledge are all **fact questions**. At this stage, Plaintiff's allegations are sufficient. Eventual payment does not automatically erase statutory injury where wages were not paid when due.

### B. NYLL § 191

For the reasons already stated, Plaintiff's **§ 191** theory should not be dismissed at this stage. The post-Grant **EDNY** pattern reflected in Plaintiff's research is materially better for Plaintiff than Defendant admits.

Plaintiff also alleges that he is a **manual worker**. Plaintiff's duties include substantial hands-on physical and household labor in caring for a diabetic patient, including bathing and grooming

help, toileting, walking assistance, transferring, feeding help, repositioning, laundry, housekeeping, assistance with bathroom trips, fall prevention, nighttime supervision, and helping maintain a safe living environment during overnight shifts. Plaintiff estimates that more than **40%** of his working time is spent on physical tasks such as lifting, transferring, toileting, bathing, dressing, repositioning, fall prevention, and nighttime bathroom assistance — well above the **25% threshold** commonly referenced in manual-worker analysis.

Those allegations are enough, at minimum, to make the issue inappropriate for dismissal. Any dispute about the precise percentage, or whether specific tasks should count, is a factual issue for discovery and trial. If the Court nonetheless concludes that greater specificity is needed, that would be a classic **leave-to-amend issue**, not a basis to terminate the count with prejudice.

### C. NYLL § 195

Plaintiff also preserves his **wage-statement claim**. Defendant argues that the **FAC** is too conclusory on this issue. Plaintiff disagrees, but in any event this is the sort of count that, if the Court desires greater specificity, should not be dismissed with prejudice. Plaintiff can further specify the alleged deficiencies, including whether the statements failed to reflect the actual timing and grouping of payments, the affected workweeks, and the treatment of hours and related accruals.

### D. NYLL § 198 and Remedy

Plaintiff also preserves the associated **remedy theory**. To the extent the Court believes the **2025 amendment** limits available **§ 191 relief**, Plaintiff requests that any narrowing be limited to remedy, not claim survival, and that amendment be permitted to conform the prayer for relief if necessary. Plaintiff expressly preserves, at minimum, an **interest-only fallback** if the Court adopts a narrower remedial view.

Later payment does not automatically erase statutory injury. As Plaintiff's research explains, authorities such as **Brooklyn Savings Bank v. O'Neil, Rigopoulos v. Kervan, and Rana v. Islam** support the proposition that **delayed payment remains legally meaningful** even if wages are eventually paid.

## VI. PLAINTIFF'S RETALIATION AND RELATED CONTROL-BASED THEORIES ALSO SURVIVE

Plaintiff preserves his **retaliation claim** and related theories that **PPL** exercised sufficient control over payroll, timekeeping, **EVV use**, benefits administration, and communications to make those claims plausible.

Plaintiff's complaints were not merely about convenience or app usability in the abstract; they concerned **EVV and access barriers** insofar as those barriers affected Plaintiff's ability to submit time and receive timely wages. Plaintiff alleges that after those complaints, normal troubleshooting became restricted, mixed, or less functional, while **PPL staff** also continued contacting Plaintiff directly about matters central to the dispute. Plaintiff alleges that this change hindered meaningful troubleshooting and worsened delay. The **July 29 email** documenting **Billy's calls** and Plaintiff's request for written communication is particularly important here. A reasonable worker could be deterred from continuing to complain if the result was loss of normal technical access, confusing mixed channels, and further payroll delay. **See Ex. D.**

Plaintiff acknowledges that routing communications through counsel, standing alone, may not always amount to retaliation. Plaintiff's allegation, however, is not merely that counsel was

involved, but that wage-related complaints were followed by operational interference with troubleshooting and support relating to payroll and **EVV access**. Plaintiff also alleges, consistent with his stress test and preserved amendment theory, that Defendant failed to meaningfully assist with account access issues after protected complaints, including the refusal to squarely address whether the historical login endpoint had changed or whether Plaintiff's documented pre-cutoff attempt would be treated as timely.

Plaintiff also preserves a further contradiction bearing on **PPL's claimed role**. In this litigation, Defendant minimizes its authority and portrays itself as a limited or passive intermediary. But in the **union-recognition context**, **PPL** presented itself as having sufficient authority to communicate, structure, and implement a framework affecting caregivers. Plaintiff relies on that inconsistency not as a standalone claim here, but as evidence that **PPL's own description of its role is selective**. A defendant cannot wear two faces: claiming power when it suits its institutional interests and disclaiming responsibility when it faces liability. At minimum, that contradiction creates a factual dispute about the true scope of **PPL's control over payroll, timekeeping, benefits, and caregiver communications**.

Plaintiff's research identifies retaliation as a claim that may survive if the complaint provides a clearer timeline linking protected wage-related complaints to adverse operational consequences, including restricted support or worsened access to resolution. Plaintiff preserves that theory here and, if the Court seeks additional detail, requests leave to amend to add it.

The same is true of **PPL's role as a joint or functional employer**. **PPL's own papers** acknowledge that **PPL issues paychecks, handles payroll-related functions**, and is not merely a stranger to the employment relationship. That is enough, at minimum, to make employer status and control fact issues not suitable for final resolution on **Rule 12**.

## VII. PLAINTIFF PRESERVES HIS CONTRACT, IMPLIED-COVENANT, TORT, BENEFITS, AND DECLARATORY THEORIES

Plaintiff does not waive any pleaded count. Plaintiff preserves his **contract, implied-covenant, negligence/NIED, IIED, benefits-related, and declaratory/injunctive theories**. Plaintiff's principal opposition focuses on the statutory wage claims and the **Rule 12 defects** in Defendant's motion, but Plaintiff maintains that these additional theories are also preserved at this stage.

To the extent the Court concludes that Plaintiff's contract, implied-covenant, tort, benefits-related, or declaratory theories are insufficiently developed in their current form, Plaintiff requests that those counts be dismissed only **without prejudice** and with **leave to amend**. Those theories are preserved both as alternative claims and as part of the broader factual picture of **PPL's control, notice, and the harms caused by delayed pay and disrupted support**.

## VIII. RULE 19 DOES NOT SUPPORT DISMISSAL WITH PREJUDICE

Plaintiff's research correctly identifies **Rule 19** and **consumer joinder** as one of Defendant's strongest pressure points. Plaintiff does not ignore that issue.

Plaintiff's position is that **PPL** has independent payroll, timekeeping, **EVV, processing, system-access, and benefits responsibilities** sufficient to sustain claims against it. Plaintiff's allegations target **PPL's own conduct**, not merely the consumer's acts. The existence of

consumer responsibilities does not eliminate **PPL's own potential liability** for the conduct alleged here.

That said, even if the Court concludes that the consumer is necessary, **Rule 19** would not justify dismissal with prejudice at this stage. Plaintiff maintains that **PPL may be sued for its own payroll, timekeeping, EVV, and benefits-related conduct**. If the Court nevertheless concludes that the consumer is a required party, the proper remedy is **joinder or amendment**, not dismissal. Plaintiff expressly requests that, if the Court concludes the consumer must be joined, the Court permit that joinder rather than dismissing the action on a curable procedural ground.

## IX. LEAVE TO AMEND MUST BE GRANTED IF THE COURT FINDS ANY DEFICIENCY

If the Court finds any count inadequately pleaded, Plaintiff requests **leave to amend**.

Plaintiff's research identifies several areas where amendment could readily cure any perceived deficiency:

• further **manual-worker detail**;

• clearer **retaliation chronology**;

• more specific **wage-statement allegations**;

• **joinder of the consumer** if necessary;

• refinement of damages under the **post-2025 § 191 amendment**;

• attachment of **payroll materials, declarations, and records** if needed;

• reframing or narrowing weaker common-law counts if warranted;

• more precise **delayed-pay examples and pay periods**;

• additional detail regarding **EVV outages, link changes, visibility records, and payroll timing**; and

• third-party corroboration of **manual-worker duties and time percentages**.

That is the correct fallback here. Plaintiff does not waive any claim, but recognizes that amendment is the proper mechanism if the Court seeks greater precision. Plaintiff further preserves the distinct **February 2026 incident** for pleading and declaration support and reserves the right to add additional detail regarding outage questions, link changes, missed payday consequences, and **PPL's internal communications records** once discovery is available.

Plaintiff further reserves the right to attach to any amended complaint the neutral **payroll records, bank statements, EVV logs, system records, and third-party affidavits** that Defendant has not yet produced, as well as a more detailed retaliation chronology.

## X. IN THE ALTERNATIVE, ANY NARROWING OF § 191 RELIEF SHOULD CONCERN REMEDY, NOT TOTAL DISMISSAL

Finally, even if the Court accepts some portion of Defendant's argument regarding the effect of the **2025 amendments** or the scope of available **§ 191 relief**, that should affect **remedy**, not categorical survival.

Plaintiff's research states that the **2025 amendment** limits damages, especially **liquidated damages**, but preserves the underlying right in at least **interest-only form**. Thus, at minimum, if the Court narrows Plaintiff's **§ 191** theory, it should permit amendment to conform the requested relief rather than dismissing the count altogether.

**XI. DISCOVERY IS NECESSARY TO RESOLVE THE DISPUTED FACTS**

In the alternative, if the Court is inclined to consider Defendant's factual assertions as part of the **Rule 12(b)(6)** analysis, Plaintiff respectfully requests that the motion be converted to one for **summary judgment under Rule 12(d)**.

Upon conversion, Plaintiff would seek limited discovery of:

      1.    **EVV system logs and metadata** showing when hours were submitted, became visible for approval, and were approved;

      2.    **outage, link-change, or portal-access records** for the **February 28, 2026 "Bad Request" event**;

      3.    **internal communications** between **PPL, its counsel, and its support staff** regarding Plaintiff's account and complaints;

      4.    **payroll-processing timestamps** showing when Plaintiff's hours were actually paid relative to the weekly cutoff; and

      5.    **benefit funding / hour-processing records** relevant to delayed **BasicWellness** and related benefits.

Because these records are uniquely within Defendant's possession and directly bear on the **causation, knowledge, and notice disputes** that Defendant seeks to resolve at the pleading stage, dismissal should be denied, or at minimum discovery should be permitted before any ruling on the factual merits of Defendant's defenses.

**NON-WAIVER**

Plaintiff preserves and does not waive any pleaded count or theory. Plaintiff's principal opposition focuses on the **statutory wage claims**, Defendant's improper attempt to resolve disputed facts under **Rule 12**, Defendant's overreading of the **preliminary-injunction order**, and the curable nature of any **Rule 19** issue. Plaintiff nevertheless maintains that his additional **contract, implied-covenant, tort, retaliation, benefits-related, and declaratory theories** are also sufficiently preserved at this stage.

To the extent the Court concludes that any claim would benefit from greater factual detail or narrower framing, Plaintiff respectfully requests dismissal **without prejudice** and **leave to amend** rather than any ruling that would preclude later refinement, joinder, amendment, or appellate review.

**CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss should be denied in its entirety.

In the alternative, if the Court finds any count insufficiently pleaded, Plaintiff respectfully requests that:

1. no claim be deemed waived;

2. no dismissal be with prejudice;

3. Plaintiff be granted **leave to amend**;

4. Plaintiff be permitted to cure any **Rule 19** concern by joinder or amendment;

5. any narrowing of **§ 191** be limited to available remedies rather than claim viability; and

6.  if the Court is inclined to rely on Defendant's factual assertions, the motion be converted to one for **summary judgment** and Plaintiff be permitted limited discovery as set forth above.

Dated: **April 13 2026**

Brooklyn, New York

Respectfully submitted,

**Daryl Stephen**

Plaintiff Pro Se

1316 Sterling Pl APT 1R

Brooklyn NY 11213

917-547-2145

DS027C@icloud.com

**UNITED STATES DISTRICT COURT EASTERN DISTRICT OF NEW YORK**

**Daryl Stephen**,

Plaintiff,

v.                                    Civil Action No. **1:25-cv-03895-NRM-LKE**

**Public Partnerships**, LLC d/b/a **PPL First**,

Defendant.

**DECLARATION OF DARYL STEPHEN**

I, **Daryl Stephen**, declare under penalty of perjury pursuant to **28 U.S.C. § 1746** that the following is true and correct:

1. I am the **Plaintiff** in this action and submit this declaration based on my personal knowledge.

2. I work as a **CDPAP caregiver** and have been required to use Defendant **Public Partnerships, LLC's** payroll, timekeeping, and **EVV-related systems** in order to report hours and receive payment.

3. I submit this declaration in support of my opposition to Defendant's motion to dismiss and to place before the Court sworn facts concerning recurring **EVV, access, visibility, approval, and delayed-pay problems** that I personally experienced.

4. In my work as a caregiver, a substantial portion of my shift duties consists of **physical, hands-on caregiving labor**, including bathing assistance, grooming assistance, toileting, walking assistance, transferring, repositioning,

feeding help, laundry, light housekeeping, nighttime bathroom trips, fall prevention, and keeping the patient safe in the home.

5.     My duties also include meal preparation, diabetic meal timing, hydration support, assistance with diabetes supplies, observation of symptoms associated with low or high blood sugar, and response to emergencies.

6.     Based on my experience performing these duties, more than **40%** of my shift time consists of physical, hands-on work rather than passive observation or clerical activity.

7.     During the period relevant to this case, I experienced recurring problems with **PPL's EVV and timekeeping systems**, including problems with access, approval visibility, and timely processing.

8.     I also experienced delayed payment of hours that I believed had been worked and reported in time for the ordinary payroll cycle.

9.     On specific occasions, hours I worked before the weekly **Saturday cutoff** were not paid until approximately **10 to 11 days later**.

10.     Those delayed payments were not, to my understanding, limited to hours worked after midnight and automatically rolled into the next cycle. Rather, they included hours I understood to have been worked before the weekly cutoff but that were nevertheless delayed.

11.     For example, hours I worked during the week ending **February 28, 2026**, including hours I attempted to record before the cutoff, were not paid until approximately **March 10, 2026**.

12.     I rely on those delayed-pay events as examples of the recurring payroll-delay problem I experienced in connection with **PPL's timekeeping, access, approval, and processing systems**.

13.     On **July 28, 2025**, I warned **PPL's counsel** in writing that continuing EVV issues and the Saturday cutoff put me at risk of receiving a

combined paycheck on **July 31, 2025** for the pay periods **July 13–19, 2025** and **July 20–26, 2025**.

14. In response, counsel stated that **PPL** had "looked into this" and had been informed that the issue stemmed from my "not submitting [my] time properly," while also stating that **PPL's escalation team** had been trying to work with me.

15. On **July 29, 2025**, a **PPL** staff member identified as **"Billy"** called me three times and asked detailed questions about clock-in methods, device used, phone number, timing of approvals, and alleged late submissions.

16. I asked that communications be in writing.

17. On **October 1, 2025**, I documented in writing that the EVV problem had only temporarily resolved, that I still relied on **exception processing**, and that my wages and benefits continued to be processed late.

18. I also experienced a separate issue involving the **caregiver-facing side** of the system and the **consumer-facing side** of the system.

19. For the period of **September 27–28, 2025**, I submitted shifts through **Time4Care** and the entries appeared as awaiting consumer approval.

20. At the same time, the **consumer-facing portal** displayed **"No Data Found,"** which prevented approval and delayed payment.

21. That **September 2025** issue involved what I understood to be a portal-visibility or synchronization failure after submission.

22. On **February 28, 2026**, shortly before the weekly payroll cutoff, I attempted to access the **EVV login link** I had historically used in order to submit my hours before the deadline.

23. At approximately **11:49 p.m. Eastern Time** on **February 28, 2026**, I attempted to access the login endpoint **pplathomeb2c.pplfirst.com**.

24. Instead of being allowed to log in, I received a **"Bad Request"** error message.

25. This occurred approximately ten minutes before the **11:59 p.m. Saturday payroll cutoff** that **PPL** had been enforcing and communicating in connection with timely processing.

26. I attempted to refresh and re-enter the site during that period, but I was unable to complete submission through that historical route before **11:59 p.m.**

27. Based on what I saw, the response I received was not a normal password-entry screen or a normal login process. I was unable to proceed through the historical login route before the cutoff.

28. After midnight, I navigated through **PPL's main website** and located a different login path.

29. I was only able to gain access after **12:00 a.m.** by using that alternate route.

30. Shortly afterward, at approximately **1:20 a.m.** on **March 1, 2026**, I sent a written email to **PPL** describing what had occurred.

31. In that email, I stated that I had attempted access before the cutoff, that the historical link returned a **"Bad Request"** response, and that I was only able to access the system after midnight by locating another path.

31A**.** A true and correct copy of my March 1, 2026 written notice concerning the February 28, 2026 **access failure** is attached as **Exhibit A-1.** A true and correct copy

of the related March 1–5, 2026 follow-up email chain is attached as **Exhibit A-2**.

32. In that same written notice, I asked **PPL** to confirm in writing:

a. whether the **EVV login URL** had changed;

b. whether notice of any URL change had been given to caregivers; and

c. whether my submission would be treated as timely in light of the documented pre-cutoff access failure.

33. **PPL** did not directly answer those questions.

34. Instead, **PPL** responded by sending generic sign-in links, later repeating policy language about deadlines, and eventually stated only that my **"2/28/2026 payment is being processed from the payroll team."**

35. **PPL** did not clearly tell me in writing whether:

a. the original login route had changed;

b. there had been any outage or access issue;

c. notice had been given to caregivers; or

d. my documented pre-cutoff attempt would be treated as timely.

36. Before **February 28, 2026**, I was not given any warning that the historical login route would not work, that a different login route was required, or that any outage or access issue would affect the cutoff.

37. Based on what happened, I understood that I did not miss the cutoff simply by choice or neglect. I attempted to access the system before the cutoff and was unable to use the historical login route before **11:59 p.m.**

38. After this incident, I did not receive payment for that period on the ordinary **Thursday payday schedule** and instead received payment later.

39.     The **February 28, 2026** issue is separate from the earlier **September 27–28, 2025** issue.

40.     The **September 2025** issue involved a post-submission visibility problem between the caregiver-facing and consumer-facing sides of the system.

41.     The **February 28, 2026** issue involved a pre-cutoff access denial at the login endpoint itself, followed by after-midnight alternate access.

42.     I submit this declaration to preserve the **February 28 / March 1, 2026 event** as sworn factual support for my opposition and to clarify that this later incident is a distinct example of recurring **EVV/access failures**.

43.     I also submit this declaration to preserve the facts that I experienced delayed payment, repeated payroll-related **EVV problems**, repeated written notice to **PPL**, and a lack of clear answers to my written questions about access failure, outage, notice, and timely treatment.

44.     The most probative operational records concerning these events — including **EVV logs, outage records, link-change records, visibility timestamps, payroll-processing timestamps, approval records, and related internal communications** — are in Defendant's possession, not mine.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: **April 13 2026**

Brooklyn, New York

____

**Daryl Stephen**

**UNITED STATES DISTRICT COURT EASTERN DISTRICT OF NEW YORK**

**Daryl Stephen**,

Plaintiff,

v.                                    Civil Action No. **1:25-cv-03895-NRM-LKE**

**Public Partnerships**, LLC d/b/a **PPL First**,

Defendant.

**DECLARATION OF DARYL STEPHEN REGARDING SEPTEMBER 27–28, 2025 EVV / PORTAL VISIBILITY FAILURE**

I, **Daryl Stephen**, declare under penalty of perjury pursuant to **28 U.S.C. § 1746** that the following is true and correct:

1.      I am the **Plaintiff** in this action and submit this declaration based on my personal knowledge.

2.      I work as a **CDPAP caregiver** and have been required to use Defendant **Public Partnerships, LLC's** timekeeping and **EVV-related systems** in order to report hours and receive payment.

3.      I submit this declaration to set forth sworn facts concerning a specific **September 27–28, 2025 EVV / portal visibility failure**. This incident is factually distinct from the **February 28, 2026 login-access failure** described in my other declaration.

4. During the relevant period, I used **Time4Care** to submit my shifts. For the shifts associated with **September 27–28, 2025**, I submitted my time through **Time4Care**.

5. After submission, the **caregiver-facing side** of the system showed the entries as **"Awaiting Approval."**

6. At the same time, the **consumer-facing portal** displayed **"No Data Found"** and did not show the submitted entries for approval.

7. I personally observed this mismatch during the same event. I refreshed the system and asked the consumer to check the portal again, but the **"No Data Found"** message persisted. I also contacted **PPL** about the issue.

8. The screenshots submitted as **Exhibit B**, including **Exhibit B-1 through Exhibit B-5**, are drawn from my contemporaneous documentation of this same **September 27–28, 2025** event and are offered to show what appeared on the **caregiver side** and the **consumer side** during that event.

9. Because the entries did not appear on the **consumer-facing side**, the consumer could not approve them through the normal process.

10. Because of this **post-submission visibility or synchronization problem**, the payroll process for those hours was delayed.

11. Those **September 27–28, 2025** hours were not paid until **October 9, 2025**. The hours later became visible, were approved, and were then processed.

12. This **September 2025** incident is separate from the **February 28, 2026 access failure** described in my other declaration. The **September event** involved a **visibility mismatch after submission**. The **February event** involved a **denial of access before the Saturday cutoff** at the historical login endpoint.

13. I submit this declaration to preserve the **September 27–28, 2025 incident** as sworn factual support for my opposition to Defendant's motion to dismiss and to clarify that it is a distinct example of recurring system problems involving **submission, visibility, and approval** within **PPL's EVV and Time4Care systems**.

14. The most probative records concerning this incident — including **EVV logs, portal visibility and synchronization records, approval-side display records, payroll-processing timestamps, and related internal communications** — are in Defendant's possession, not mine.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: **April 13 2026**

Brooklyn, New York

**Daryl Stephen**

# Exhibit A-1

Exhibit A-1

From: ds027c@icloud.com
Subject: EVV Access Failure Prior to 11:59 PM Cutoff – February 28 2026
Date: Mar 1, 2026 at 1:19:47 AM
To: NYCDPAP_TS@pplfirst.com, pplhelp@pplfirst.com,
privacy@pplfirst.com, NY CD PAP NYCDPAP@pplfirst.com

Dear PPL Support,

At approximately 11:49 PM ET on February 28 2026, I attempted to access the EVV login link I have historically used (pplathomeb2c.pplfirst.com) in order to submit my hours before the 11:59 PM payroll cutoff.

The link returned a "Bad Request" error and did not allow me to log in prior to the deadline. I have preserved a timestamped screenshot showing the URL, time (11:49 PM), and error message.

I was only able to access the system after 12:00 AM by navigating through the main PPL website and locating a different login link.

Please confirm:

1. Whether the EVV login URL was changed or updated;

2. Whether notice of any URL change was provided to caregivers;

3. Whether tonight's submission will be processed as timely given the documented access failure prior to 11:59 PM.

I am requesting confirmation in writing.

Thank you,

Daryl Stephen

PPL ID:

Sent from my iPhone

# Exhibit A-2

Exhibit A-2

From: NY CD PAP NYCDPAP@pplfirst.com
Subject: RE: EVV Access Failure Prior to 11:59 PM Cutoff – February 28 2026
CRM:0599035
Date: Mar 3, 2026 at 4:56:25 PM
To: ds027c@icloud.com

Hello,

Thank you for contacting PPL. When trying to sign into your PPL@Home account to approve timesheets please use the link(s) below to access your account and go to the "Timesheet" tab:

Sign into your PPL account below:
https://pplathome.pplfirst.com/emailsignin  - Email Sign in
https://pplathome.pplfirst.com/mobilesignin - Mobile Number Sign in

Should you have any questions or require additional assistance, please do not hesitate to contact us. You can contact our dedicated team at  1-833-247-5346, and we will be happy to assist you.

Thank you,
Savannah
PPL Team

From: ds027c@icloud.com
Subject: Re: EVV Access Failure Prior to 11:59 PM Cutoff – February 28 2026
CRM:0599035
Date: Mar 3, 2026 at 5:33:57 PM
To: NY CD PAP NYCDPAP@pplfirst.com

Please confirm, Whether 3/1/26 submission will be processed as timely given the documented access failure prior to 11:59 PM 2/28/26.

> On Mar 3, 2026, at 4:56 PM, NY CD PAP <NYCDPAP@pplfirst.com> wrote:
>
> Whether tonight's submission will be processed as timely given the documented access failure prior to 11:59 PM.



**From: NY CD PAP** >

**To:** ds027c@icloud.com >

March 4, 2026 at 2:09 PM

Good afternoon,

To best assist, we would need your PPL ID to view your entries. Please be advised Timekeeping requires Personal Assistant's entries are submitted by 11:59pm Saturdays and approved by the Consumer/Designated Representative approve by 12pm Sundays to ensure payment is issued the following Thursday. If you need additional assistance, please call our Customer Support Center Monday through Saturday 8am to 8pm at 1-833-247-5346.

Your Public Partnerships (PPL) Team Member,
Aminata

From: ds027c@icloud.com
Subject: Re: EVV Access Failure Prior to 11:59 PM Cutoff – February 28 2026
CRM:0599035
Date: Mar 4, 2026 at 2:49:45 PM
To: NY CD PAP NYCDPAP@pplfirst.com

Please provide me the time entry for the date I'm questioning 2/28/26 – 3/1/26. PPL ID: ████████

Sent from my iPhone

From: NY CD PAP NYCDPAP@pplfirst.com
Subject: Re: EVV Access Failure Prior to 11:59 PM Cutoff – February 28 2026
CRM:0599035
Date: Mar 5, 2026 at 5:30:53 PM
To: ds027c@icloud.com

Hello!

Based information from the timesheet shows that 2/28/2026 payment is being processed from the payroll team.

Your PPL Team Member Pablo

From: ds027c@icloud.com
Subject: Re: EVV Access Failure Prior to 11:59 PM Cutoff – February 28 2026
CRM:0599035
Date: Mar 5, 2026 at 5:42:33 PM
To: NY CD PAP NYCDPAP@pplfirst.com

Please provide me with screenshot, meta data or a written statement of time entry for the date in question 2/28/26 - 3/1/26. PPL ID: PRV-NY-10267203

Sent from my iPhone

From: NY CD PAP NYCDPAP@pplfirst.com
Subject: Re: EVV Access Failure Prior to 11:59 PM Cutoff – February 28 2026
CRM:0599035
Date: Mar 6, 2026 at 3:31:03 PM
To: ds027c@icloud.com

Hello,

You can view this information on your PPL@Home online portal. Time entries in processing and paystubs will be available to view.

Thank you,
PPL Team Member Makeda

# Exhibit B-1

Exhibit B-1



# PPL@Home

## Welcome, Daryl!

NY CDPAP

CLICK TO SELECT

# Exhibit B-2

Exhibit B-2



# **Exhibit B-3**

Exhibits B-3



**Welcome, Sean!**

NY CDPAP

CLICK TO SELECT  >

# Exhibit B-4

Exhibit B-4

Please use the filters to view in-process pay periods

PA PPL ID

Daryl Stephen

In review ⌄

▼ Search

## In-Process Timesheets ⌃

No Data found

Please use the filters to view previous pay periods.

09/21/2025-09/2... ⌄

Daryl Stephen

Status ⌄

▼ Search

Copyright © 2024 PPL CareConnect All rights reser

Privacy Policy   Terms of Use

Select Language ⇕

Font Size: Small ⇕

pplathome.pplfirst.com ↻

# Exhibit B-5

Exhibit B-5

**EXHIBIT B-5**

**IDENTIFICATION AND EXPLANATION OF EXHIBIT B SCREENSHOTS**

**(September 27–28, 2025 EVV / Portal Visibility Failure)**

The screenshots in **Exhibit B** correspond to the **September 27–28, 2025 EVV / portal visibility failure** described in **Plaintiff's Declaration B**. They are Plaintiff's contemporaneous documentation of the same event from both the **caregiver side** and the **consumer side** of PPL's system.

- **Ex. B-1** shows the **caregiver-side PPL@Home / Time4Care login context** associated with Plaintiff's account. It identifies the caregiver-side environment from which Plaintiff submitted time.

- **Ex. B-2** shows the **caregiver-side timesheet summary / in-process payroll view** for Plaintiff's account. It reflects that the pay period **09/21/2025– 09/27/2025** appeared within the system on the caregiver side for consumer **Sean Stephen**.

- **Ex. B-3** shows the **consumer-side login context** for **Sean Stephen**, the person receiving care. It identifies the consumer-facing side of the same PPL system where approval was required.

- **Ex. B-4** shows the **consumer-side in-process timesheet screen** displaying **"No Data found"** in the relevant review area. It is offered to show that, although the entry appeared within the system on the caregiver side, the corresponding entry did not properly appear on the consumer side for approval at that time.

Taken together, these screenshots are offered as visual documentation of the same **post-submission visibility / synchronization problem**: the time entry appeared on the

caregiver side, but did not properly display on the consumer side for approval and instead showed **"No Data found."**

These screenshots are not offered as a complete technical log. They are offered as contemporaneous visual documentation of the same event from both sides of PPL's system. Some of these images are still frames drawn from Plaintiff's video documentation of that event.

# **Exhibit C-1**

Exhibit C-1

**Public Partnerships Home Care LLC**
17 Plaza Drive
Latham, NY 12110

Voucher Date
03/12/2026

**Voucher Number**



***** This is not a check *****

**Direct Deposit Amount**     $ *******914.63

PPL1 NY10267203 7686157 157260

Pay to
the order of:     **Daryl Stephen**

---

**Public Partnerships Home Care LLC**
17 Plaza Drive
Latham, NY 12110
833-247-5346

Daryl Stephen

| | | |
|---|---|---|
| Employee Id | | Check Date **03/12/2026** |
| Hire Date **04/03/2025** | | Period Begin **03/01/2026** |
| Employee Status **A** | | Period End **03/07/2026** |

### Pay Details

| Earnings | Hours | Rate | Amount | Shift | YTD |
|---|---|---|---|---|---|
| Regular | 56.00 | 20.65 | 1,156.40 | | 5,688.40 |
| Holiday Base | | | 0.00 | | 82.60 |
| Holiday Premium | | | 0.00 | | 41.30 |
| | **56.00** | | **1,156.40** | | **5,812.30** |

| Taxes | | Taxable | Amount | YTD |
|---|---|---|---|---|
| Federal Income Tax | H- | 1,156.40 | 57.00 | 57.00 |
| Social Security | | 1,156.40 | 71.69 | 360.36 |
| Medicare | | 1,156.40 | 16.77 | 84.28 |
| NYS Income Tax | S-0 | 1,156.40 | 51.60 | 216.20 |
| NY Paid Leave | | 1,156.40 | 5.00 | 25.11 |
| NY Disability | | 1,156.40 | 0.60 | 5.40 |
| NYC Income Tax | S-0 | 1,156.40 | 39.11 | 161.25 |
| | | | **241.77** | **909.60** |

### Other Info

| Direct Deposits | | Amount |
|---|---|---|
| J.P. MORGAN CHASE BA | ****4678 | 914.63 |
| | | **914.63** |

| Time Off Balances | Balance |
|---|---|
| PTO | 44.09 |
| Unpaid Sick (NYC Cases Only) | 32.00 |

### Statement Summary

| | |
|---|---|
| Gross Pay | 1,156.40 |
| Federal Taxes | -145.46 |
| State and Local Taxes | -96.31 |
| Other Deductions | 0.00 |
| Net Pay | 914.63 |
| Direct Deposits | 914.63 |
| Net Check | 0.00 |

| Punches | Day | In | Out | Hours | Patient |
|---|---|---|---|---|---|
| 02/22 | Sun | 01:59PM | 11:59PM | 10.00 | Sean |
| 02/25 | Wed | 01:59PM | 11:59PM | 10.00 | Sean |
| 02/28 | Sat | 03:30PM | 11:30PM | 8.00 | Sean |
| 03/01 | Sun | 01:59PM | 11:59PM | 10.00 | Sean |
| 03/04 | Wed | 01:59PM | 11:59PM | 10.00 | Sean |
| 03/07 | Sat | 03:50PM | 11:50PM | 8.00 | Sean |

### Wage Parity Statement

| Wage Parity | Hours | Rate | Amount |
|---|---|---|---|
| Gross Liability | 56.00 | 22.19 | 1,242.64 |
| Cash Paid | 56.00 | 20.65 | 1,156.40 |
| WP Health and/or Flex Benefits | 56.00 | 0.87 | 48.72 |
| WPPTO | 56.00 | 0.67 | 37.52 |
| **Total Cash and Benefits** | | | **1,242.64** |

# Exhibit C-2

Exhibit C-2

**Public Partnerships Home Care LLC**
17 Plaza Drive
Latham, NY 12110

Voucher Date
10/09/2025

Voucher Number

***** This is not a check *****

**Direct Deposit Amount**     $ *******888.40

PPL1 NY10267203 4125371 165207

Pay to
the order of:      **Daryl Stephen**



---

**Public Partnerships Home Care LLC**
17 Plaza Drive
Latham, NY 12110
1-833-247-5346

Daryl Stephen

| | | Voucher Number: |
|---|---|---|
| Employee Id | | Check Date | **10/09/2025** |
| Hire Date | **04/03/2025** | Period Begin | **09/28/2025** |
| Employee Status | **A** | Period End | **10/04/2025** |

## Pay Details

| Earnings | Hours | Rate | Amount | Shift | YTD |
|---|---|---|---|---|---|
| Regular | 56.00 | 20.10 | 1,125.60 | | 14,200.68 |
| Training | | | 0.00 | | 4.13 |
| Spread of Hours | | | 0.00 | | 29.29 |
| | **56.00** | | **1,125.60** | | **14,234.10** |

| Taxes | | | Taxable | Amount | YTD |
|---|---|---|---|---|---|
| Federal Income Tax | H- | | 1,125.60 | 57.38 | 410.80 |
| Social Security | | | 1,125.60 | 69.78 | 882.51 |
| Medicare | | | 1,125.60 | 16.32 | 206.39 |
| NYS Income Tax | S-0 | | 1,125.60 | 50.92 | 581.50 |
| NY Paid Leave | | | 1,125.60 | 4.37 | 55.23 |
| NY Disability | | | | 0.60 | 11.12 |
| NYC Income Tax | S-0 | | 1,125.60 | 37.83 | 428.57 |
| | | | | **237.20** | **2,576.12** |

## Other Info

| Direct Deposits | | Amount |
|---|---|---|
| J.P. MORGAN CHASE BA | ****4678 | 888.40 |
| | | **888.40** |

| Time Off Balances | Balance |
|---|---|
| PTO | 23.56 |

## Statement Summary

| | |
|---|---|
| Gross Pay | 1,125.60 |
| Federal Taxes | -143.48 |
| State and Local Taxes | -93.72 |
| Other Deductions | 0.00 |
| Net Pay | 888.40 |
| Direct Deposits | 888.40 |
| Net Check | 0.00 |

| Punches | Day | In | Out | Hours | Patient |
|---|---|---|---|---|---|
| 09/21 | Sun | 01:59PM | 11:59PM | 10.00 | Sean |
| 09/23 | Tue | 01:59PM | 11:59PM | 10.00 | Sean |
| 09/27 | Sat | 03:59PM | 11:59PM | 8.00 | Sean |
| 09/29 | Mon | 01:59PM | 11:59PM | 10.00 | Sean |
| 10/01 | Wed | 01:59PM | 11:59PM | 10.00 | Sean |
| 10/03 | Fri | 03:59PM | 11:59PM | 8.00 | Sean |

## Wage Parity Statement

| Wage Parity | Hours | Rate | Amount |
|---|---|---|---|
| Gross Liability | 56.00 | 21.64 | 1,211.84 |
| Cash Paid | 56.00 | 20.10 | 1,125.60 |
| WP Health and/or Flex Benefits | 56.00 | 0.87 | 48.72 |
| WPPTO | 56.00 | 0.67 | 37.52 |
| **Total Cash and Benefits** | | | **1,211.84** |

# **Exhibit D**

Exhibit D



**Janice Sued Agresti**
**Member I Cozen O'Connor**
3 WTC, 175 Greenwich Street 55th Floor I New York, NY 10007
P: 212-453-3978 F: 646-588-1558
Email I Map I cozen.com

**From:** ds027c@icloud.com <ds027c@icloud.com>
**Sent:** Monday, July 28, 2025 10:56:11 AM
**To:** Agresti, Janice Sued <JAgresti@cozen.com>; Foster, Walter <WalterFoster@cozen.com>
**Cc:** Deborah Drexler <ddrexler@pplfirst.com>; pplhelp@pplfirst.com <pplhelp@pplfirst.com>; NY CD PAP <NYCDPAP@pplfirst.com>; privacy@pplfirst.com <privacy@pplfirst.com>; NY CD PAP <nycdpap@pplfirst.com>
**Subject:** Upcoming Combined Wage Payment – Urgent Compliance Issue

**EXTERNAL SENDER**

Dear Ms. Agresti,

I'm writing to notify you that, due to the continued issues with PPL's EVV system and the Saturday 11:59 PM cutoff, I am at risk of receiving a combined paycheck this Thursday, July 31st, for the pay periods of July 13–19 and July 20–26.

This would constitute an additional delayed wage payment — the very issue at the center of my federal complaint.

I am bringing this to your attention now to give PPL an opportunity to correct the issue before further harm occurs. Please confirm whether action will be taken to prevent the issuance of a combined payment and ensure timely, separate compensation per pay period.

I am also copying Ms. Drexler for continuity, given her past involvement in this matter.

English and I am fully prepared to present to court and the media as should be implied.

Respects,
Luca Stephen

On Jul 28, 2025, at 9:29 PM, Agresti, Janice Sued <JAgresti@cozen.com> wrote:


Dear Mr. Stephen:

Thank you. We are in receipt of your email.

As an initial matter, we ask that you immediately ***cease and desist any communications directly to PPL regarding your lawsuit. All future correspondence regarding your lawsuit should be directed to Walter and me only,*** as we are counsel for PPL in this matter.

As to your email below,  we have looked into this and have been informed that the issue stems from you not submitting your time properly. I have been informed that PPL's escalation team has been trying to work with you on this.

Lastly, as to your email regarding when we are submitting our response to your lawsuit, PPL will be responding in due course in accordance with the rules of the Court.

Regards,
Janice

On Jul 28, 2025, at 9:29 PM, Agresti, Janice Sued
<JAgresti@cozen.com> wrote:


Dear Mr. Stephen:

Thank you. We are in receipt of your email.

As an initial matter, we ask that you immediately ***cease and desist any communications directly to PPL regarding your lawsuit. All future correspondence regarding your lawsuit should be directed to Walter and me only,*** as we are counsel for PPL in this matter.

As to your email below,  we have looked into this and have been informed that the issue stems from you not submitting your time properly. I have been informed that PPL's escalation team has been trying to work with you on this.

Lastly, as to your email regarding when we are submitting our response to your lawsuit, PPL will be responding in due course in accordance with the rules of the Court.

Regards,
Janice

On Jul 29, 2025, at 10:14 AM, Agresti, Janice Sued
<JAgresti@cozen.com> wrote:


Dear Mr. Stephen,

As I mentioned in my previous email, it is our understanding that PPL's
escalations team has been working with you to resolve your issues with
submitting your time. They are dedicated to assisting you in understanding
how to submit your time correctly and clarify your misunderstandings.
Please keep working with them to resolve that matter.

Just to reiterate, the only restriction is that you should not discuss the
**lawsuit** directly with PPL. Any discussions related to the **lawsuit** should be
going through counsel.

Thank you.

Regards,
Janice



**Janice Sued Agresti**
**Member l Cozen O'Connor**
3 WTC, 175 Greenwich Street 55th Floor l New York, NY 10007
P: 212-453-3978 F: 646-588-1558
Email l Map l cozen.com

*Janice Sued Agresti is admitted to practice in New York, New Jersey and
Pennsylvania.*

---

**From:** ds027c@icloud.com <ds027c@icloud.com>

**From:** ds027c@icloud.com <ds027c@icloud.com>
**Sent:** Tuesday, July 29, 2025 1:05 PM
**To:** Agresti, Janice Sued <JAgresti@cozen.com>
**Cc:** Foster, Walter <WalterFoster@cozen.com>
**Subject:** Follow-Up Regarding Direct Communications from PPL Staff

**\*\*EXTERNAL SENDER\*\***

Dear Ms. Agresti,

Thank you for the clarification. I appreciate your reiteration that discussions regarding the lawsuit should not be directed to PPL staff and must go through counsel.

However, I must again place on record that during the July 29 calls from a PPL staff member named "Billy," the questions asked went beyond general support and directly touched on issues central to the claims raised in my complaint — including specific questions about my clock-in methods, device used, phone number, timing of approvals, and allegations of late submission.

I stated on each of the three calls that I could not discuss matters related to the legal proceeding, but the individual continued to pursue those lines of questioning. I am concerned that this contact — particularly after your prior directive — could be construed as an attempt to undermine or pre-litigate issues outside the court.

Moving forward, I will only correspond regarding payroll or EVV technical issues in writing, and only when it does not relate to matters currently in litigation. Please ensure no further phone contact is made, and that any needed communication is done via email.

# **Exhibit E**

Exhibit E

From: ds027c@icloud.com
Subject: Follow-Up: EVV/Time Approval Issue
Date: Oct 1, 2025 at 7:23:41 PM
To: Janice Sued Agresti jagresti@cozen.com
Cc: WalterFoster@cozen.com

Dear Counsel,

I am following up on my September 29, 2025 email regarding the EVV malfunction where my caregiver hours were not appearing for the consumer to approve.

As of today, the issue appears to have temporarily resolved — the consumer can now see and approve the hours from the weekend, and I was able to submit time for late payment using the exception process.

However, the delay in visibility caused wages and benefits to be processed late, consistent with the harms described in my filings. I remain concerned that the EVV phone system is still nonfunctional, that I continue to rely on exception forms, and that future disruptions may recur.

I am documenting this update for accuracy and transparency.

Sincerely,

Daryl Stephen