# Exhibit A

Exhibit A

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF NEW YORK**

————————————————————X

**DARYL STEPHEN**,

Plaintiff,

-against- No. **1:25-cv-03895 (NRM)(LKE)**

**PUBLIC PARTNERSHIPS LLC**,

Defendant.

————————————————————X

**PROPOSED SECOND AMENDED AND SUPPLEMENTAL COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff **Daryl Stephen**, proceeding pro se, alleges as follows against Defendant **Public Partnerships LLC**.

**PRELIMINARY STATEMENT**

1. This is a **wage-payment**, **wage-statement**, **written-computation**, **correction-payment**, and **recordkeeping** action arising from Defendant **Public Partnerships LLC's** payroll and fiscal-intermediary functions in connection with Plaintiff's work as a **Consumer Directed Personal Assistance Program** personal assistant.

2. Plaintiff brings this proposed **Second Amended and Supplemental Complaint** to clarify and narrow the operative pleading and to add related events that occurred after the **First Amended Complaint**.

3. The central supplemental event concerns an **August 19, 2026** punch shown in PPL payroll records as beginning at **1:59 p.m.** and ending at **11:59 p.m.**

4. PPL's **August 27, 2026** voucher credited only **1.25 hours** for that August 19, 2026 punch.

5. After Plaintiff raised the payroll discrepancy in writing, PPL later issued a separate **September 9, 2026** payment and voucher crediting **8.75 additional hours** for the same August 19, 2026 punch.

6. The September 9, 2026 voucher listed the pay period as **August 23, 2026 through August 29, 2026**, even though the punch detail on that voucher identified **August 19, 2026.**

7. The **1.25 hours** shown on the August 27 voucher and the additional **8.75 hours** shown on the September 9 voucher total **10.00 hours**, matching the **1:59 p.m. to 11:59 p.m.** punch span shown on the records.

8. Plaintiff does not plead the September 9, 2026 payment as an admission by PPL. Plaintiff pleads it as part of the payroll sequence showing that PPL later paid **8.75 additional hours** connected to the August 19 punch, placed that correction under a different pay-period label, and did not provide Plaintiff with a complete written computation explaining the correction.

9. Plaintiff seeks relief from PPL for PPL's own **payroll**, **wage-payment**, **wage-statement**, **written-computation**, **correction-payment**, **recordkeeping**, **deduction**, and **support** functions.

10. Plaintiff does not seek to impose liability on PPL for the Consumer's independent care-management duties, scheduling duties, or direct supervision of care.

11. Plaintiff does not bring any claim under the **National Labor Relations Act**, does not rely on the **September 24, 2026 NLRB election notice**, and does not ask this Court to decide any representation, election, certification, unfair-labor-practice, or union-representation issue.

12. Plaintiff does not presently allege that the September 9, 2026 correction failed to credit **Safe and Sick Leave** or **PTO**. Plaintiff's present claim is that PPL paid the remaining **8.75 hours** late, issued a wage statement with a wrong or unclear pay-period label, and failed to provide a complete written computation after Plaintiff requested one.

**JURISDICTION AND VENUE**

13. This Court has **federal-question jurisdiction** under **28 U.S.C. § 1331** because Plaintiff asserts a claim under the **Fair Labor Standards Act**, **29 U.S.C. §§ 201 et seq.**

14. This Court has **supplemental jurisdiction** over Plaintiff's New York Labor Law claims under **28 U.S.C. § 1367** because those claims arise from the same employment relationship, payroll practices, timekeeping systems, wage-payment

events, wage statements, correction-payment records, and written-computation dispute as Plaintiff's federal claim.

15. Venue is proper in the **Eastern District of New York** under **28 U.S.C. § 1391** because Plaintiff resides in this District, performed relevant work connected to this District, received payroll communications and wage payments in this District, and a substantial part of the events and omissions giving rise to the claims occurred in this District.

**PARTIES**

16. Plaintiff **Daryl Stephen** is an individual residing in Brooklyn, New York.

17. Plaintiff worked as a personal assistant in the **Consumer Directed Personal Assistance Program**.

18. Defendant **Public Partnerships LLC** is a company that performs fiscal-intermediary, payroll, wage-processing, wage-statement, deduction, tax, correction-payment, recordkeeping, support, and related administrative functions for CDPAP personal assistants.

19. Defendant is also known to Plaintiff as **PPL** and/or **PPL First**.

20. At all relevant times, Defendant acted directly or indirectly in the interest of an employer with respect to Plaintiff's wages, payroll records, wage statements, time-processing, correction payments, direct deposits, deductions, taxes, and related employment records.

21. At all relevant times, Defendant was Plaintiff's **employer or joint employer** for purposes of the wage-payment and wage-statement obligations asserted in this action.

22. Upon information and belief, Defendant was an **enterprise engaged in commerce** within the meaning of the **Fair Labor Standards Act** because it had employees engaged in commerce or handling goods, materials, records, funds, electronic systems, payroll transmissions, direct deposits, communications, or instrumentalities that moved in interstate commerce, and because Defendant's annual gross volume of business exceeded the statutory threshold.

23. Plaintiff also used electronic systems, telephone systems, payroll communications, direct-deposit banking, and electronic wage records that operated through interstate channels of commerce.

**PLAINTIFF'S WORK AND MANUAL-WORKER STATUS**

24. Plaintiff performed hands-on personal-assistance and home-care work.

25. Plaintiff's duties included physical caregiving and physical labor, including mobility assistance, fall prevention, repositioning, walking assistance, meal and hydration assistance, household support, laundry, cleaning, and related personal-assistance tasks.

26. Plaintiff's work required physical effort and hands-on assistance.

27. Plaintiff estimates in good faith that more than **25 percent** of his work consisted of physical labor.

28. Plaintiff was therefore a **manual worker** within the meaning of **New York Labor Law §§ 190 and 191**.

29. Defendant previously treated or acknowledged Plaintiff's work as CDPAP personal-assistant work and paid Plaintiff through PPL's payroll system.

**PPL'S ROLE AND THE CONSUMER'S SEPARATE ROLE**

30. The Consumer had separate care-management responsibilities, including directing day-to-day care, scheduling authorized services, and participating in approval functions.

31. PPL had separate payroll and fiscal-intermediary responsibilities.

32. PPL issued or administered Plaintiff's wage statements, direct deposits, payroll records, correction payments, deductions, tax-related payroll information, and related wage records.

33. PPL also administered or controlled systems or support channels through which Plaintiff's time was submitted, processed, corrected, paid, displayed, or reconciled.

34. Plaintiff seeks relief from PPL only for PPL's own payroll, wage-payment, wage-statement, correction-payment, written-computation, recordkeeping, and support conduct.

35. Plaintiff does not seek relief against the Consumer in this action.

36. Complete relief can be awarded between Plaintiff and PPL because Plaintiff seeks relief based on PPL's own wage-payment, wage-statement, correction-payment, written-computation, and recordkeeping duties.

**TIMEKEEPING, SUPPORT, AND PAPER-TIMESHEET EXCEPTIONS**

37. PPL used or administered time-reporting and payroll systems, including **Time4Care**, **EVV**, telephony, paper-timesheet, portal, support, and payroll systems.

38. Plaintiff experienced recurring difficulty with EVV, telephony, Time4Care, support, and correction processes.

39. Plaintiff repeatedly notified PPL or PPL-related support channels that ordinary reporting methods were not functioning reliably as applied to him and that he needed a reliable method to report, correct, and be paid for approved work.

40. In 2025 and 2026, PPL sent Plaintiff text messages confirming **paper-timesheet exceptions.**

41. Those paper-timesheet-exception approvals included periods covering **May 29, 2025 through August 29, 2025**; **July 3, 2025 through October 3, 2025**; **September 28, 2025 through December 28, 2025**; and **December 21, 2025 through December 21, 2026**.

42. PPL also sent later reminder texts in 2026 confirming that the **December 21, 2025 through December 21, 2026** paper-timesheet exception remained in effect.

43. Plaintiff does not allege that the existence of paper-timesheet exceptions alone proves that every electronic or telephonic reporting method malfunctioned.

44. Plaintiff alleges that the paper-timesheet exceptions show PPL had notice that Plaintiff needed an approved fallback reporting method and that PPL controlled or administered that fallback process.

45. Despite those paper-timesheet exceptions and Plaintiff's continuing notices, Plaintiff's hours were not always processed, paid, corrected, explained, or reconciled in a timely and accurate manner.

**THE AUGUST 19 THROUGH SEPTEMBER 9, 2026 PAYROLL EVENT**

46. Plaintiff received or accessed a PPL payroll voucher or wage statement for **Voucher No. 11499289**.

47. Voucher No. 11499289 listed the pay period as **August 16, 2026 through August 22, 2026**.

48. Voucher No. 11499289 listed a check date of **August 27, 2026**.

49. Voucher No. 11499289 showed **19.25 total hours**, gross pay of **$397.51**, and a direct deposit amount of **$343.18**.

50. The vouchers reflected Plaintiff's hourly rate as **$20.65 per hour**. The September 9, 2026 voucher credited **8.75 hours** at that rate, for **$180.69 gross** and **$162.25 net**.

51. Voucher No. 11499289 showed an **August 19, 2026** punch with a punch time of **1:59 p.m. to 11:59 p.m.**

52. Voucher No. 11499289 credited only **1.25 hours** for the August 19, 2026 punch.

53. The August 19, 2026 punch shown as **1:59 p.m. to 11:59 p.m.** facially reflected a **10.00-hour** punch span.

54. The August 19, 2026 punch did not cross midnight and did not cross from one workweek into another. It was a single-day punch within the **August 16, 2026 through August 22, 2026** pay period.

55. On the face of PPL's own payroll records, the later **8.75-hour** correction plus the earlier **1.25-hour** credit show that PPL ultimately treated the August 19, 2026 punch as **10.00 payable hours.**

56. The August 19, 2026 punch belonged to the **August 16, 2026 through August 22, 2026** workweek.

57. The workweek containing the August 19, 2026 punch ended on **August 22, 2026.**

58. The seven-calendar-day payment deadline under **NYLL § 191(1)(a)**, absent a statutory exception, was **August 29, 2026.**

59. PPL's August 27, 2026 voucher reflected the weekly payday or check date for the **August 16, 2026 through August 22, 2026** pay period.

60. Plaintiff raised a payroll discrepancy concerning **Voucher No. 11499289** with PPL.

61. Plaintiff also copied PPL's counsel for transparency.

62. PPL responded in writing that, "[u]pon review," Plaintiff had "a payment ready to be disbursed 9/3/26."

63. PPL directed Plaintiff to view his paystubs on the PPL@Home online portal under the "Timesheet" tab.

64. PPL also directed Plaintiff to contact customer support if he needed further assistance.

65. Plaintiff responded to PPL on **September 5, 2026** regarding the payroll issue.

66. After Plaintiff's prior complaint emails, and without Plaintiff submitting a new correction entry after those emails, Plaintiff received a separate direct deposit from PPL on or about **September 9, 2026** in the net amount of **$162.25.**

67. Plaintiff later received or accessed a PPL payroll voucher or wage statement for **Voucher No. 11676508**.

68. Voucher No. 11676508 listed a check date of **September 9, 2026**.

69. Voucher No. 11676508 listed a pay period beginning **August 23, 2026** and ending **August 29, 2026.**

70. The punch detail on Voucher No. 11676508 identified **August 19, 2026.**

71. Voucher No. 11676508 showed **8.75 hours**, gross pay of **$180.69**, and a direct deposit amount of **$162.25.**

72. Voucher No. 11676508 appears to show an additional **8.75 hours** for the same August 19, 2026 punch that Voucher No. 11499289 had credited for only **1.25 hours**.

73. The **1.25 hours** on Voucher No. 11499289 and the **8.75 hours** on Voucher No. 11676508 total **10.00 hours.**

74. That **10.00-hour** total matches the **1:59 p.m. to 11:59 p.m.** punch span shown for August 19, 2026.

75. The remaining **8.75 hours** for the August 19, 2026 punch were not paid until **September 9, 2026**.

76. The September 9, 2026 payment occurred approximately **18 days after** the August 22, 2026 workweek ended.

77. The September 9, 2026 payment occurred approximately **11 days after** the seven-calendar-day deadline under **NYLL § 191(1)(a)**.

78. The September 9, 2026 payment occurred approximately **13 days after** the August 27, 2026 check date reflected on Voucher No. 11499289.

79. Plaintiff does not plead the September 9, 2026 payment as an admission of liability.

80. Plaintiff pleads the September 9, 2026 payment as part of the payroll sequence showing that PPL later paid **8.75 additional hours** connected to the August 19 punch and placed that correction under a different pay-period label.

**THE SEPTEMBER 9, 2026 WAGE-STATEMENT DEFECT AND WRITTEN-COMPUTATION ISSUE**

81. **NYLL § 195(3)** requires a wage statement with every payment of wages.

82. Among other things, the wage statement must list the dates of work covered by the payment, rates of pay, gross wages, deductions, allowances if any, applicable home-care-benefit information if provided, and net wages.

83. **NYLL § 195(3)** also requires an employer, upon request of an employee, to furnish an explanation in writing of how wages were computed.

84. Voucher No. 11676508 listed the pay period as **August 23, 2026 through August 29, 2026**.

85. But the punch detail on Voucher No. 11676508 identified **August 19, 2026**.

86. August 19, 2026 belonged to the prior **August 16, 2026 through August 22, 2026** workweek.

87. The September 9, 2026 voucher therefore did not accurately list the **dates of work covered by the payment**, because the punch detail on that voucher

identified work performed on **August 19, 2026**, which was not within the **August 23, 2026 through August 29, 2026** pay period listed on the same voucher.

88. Plaintiff could not determine from the face of Voucher No. 11676508 why an August 19 punch appeared on a wage statement labeled for the August 23 through August 29 pay period.

89. Plaintiff could not determine from the face of the wage statement what workweek the September 9 payment covered.

90. Plaintiff could not determine from the face of the wage statement why the same August 19 punch was split across two vouchers.

91. Plaintiff could not determine from the face of the wage statement whether the September 9 payment fully corrected the August 19 delayed wages.

92. Plaintiff could not determine from the face of the wage statement whether any additional wages or correction remained due.

93. Plaintiff could not determine from the face of the wage statement how PPL computed the correction.

94. Plaintiff requested a written explanation, computation, or reconciliation of the hours and calculations used for the August 2026 voucher and the September 2026 payment.

95. PPL did not provide Plaintiff with a complete written computation identifying the specific pay period, hours, rate, calculation, approval record, correction record, wage-statement basis, or reason for the **$162.25 payment**.

96. The inaccurate or unclear wage statement caused Plaintiff concrete informational and practical harm because Plaintiff could not verify from the wage statement itself whether the delayed **8.75 hours** had been fully corrected.

97. The inaccurate or unclear wage statement also impaired Plaintiff's ability to challenge, reconcile, or recover wages promptly.

98. The inaccurate or unclear wage statement required Plaintiff to spend time and effort seeking a written computation and reconciliation that PPL did not provide.

99. This defect caused practical harm because Plaintiff could not verify whether the September 9 payment fully corrected the delayed August 19 wages without seeking a written computation from PPL, and PPL did not provide a complete written computation.

100. These injuries were not merely technical or abstract.

**FINANCIAL AND PRACTICAL HARM**

101. Plaintiff experienced financial and practical harm from delayed, combined, inaccurate, unclear, or unreconciled payroll processing.

102. Plaintiff incurred approximately **$500 in late fees** in connection with payroll problems.

103. Plaintiff experienced unpaid rent pressure, including **July 2025 rent issues**.

104. Plaintiff had to rely on personal credit because wages were not consistently processed, paid, corrected, or reconciled in a timely and clear manner.

105. Plaintiff was also forced to spend time and effort repeatedly seeking payroll correction, written explanations, troubleshooting, and reconciliation from PPL.

106. When PPL delayed or failed to provide a complete written computation, Plaintiff could not determine what hours had been accepted, rejected, corrected, carried over, paid, or left unresolved.

107. PPL controlled or had access to records that Plaintiff did not have, including backend **EVV**, **Time4Care**, telephony, CRM, support-ticket, audit-log, approval, rejection, edit, correction-payment, payroll-processing, wage-statement, and written-computation records.

108. Plaintiff does not have access to PPL's complete backend records.

109. PPL's backend records are necessary to confirm the exact reason the August 19 punch was split across two vouchers, why the September 9 voucher used a different pay-period label, and what computation PPL used for the September 9 correction.

## SCOPE OF CLAIMS

110. Plaintiff does not presently allege that the September 9, 2026 correction failed to credit **Safe and Sick Leave** or **PTO**.

111. Plaintiff does not seek broad systemwide redesign of PPL's CDPAP systems.

112. Plaintiff does not seek immediate preliminary injunctive relief through this pleading.

113. Plaintiff seeks damages, statutory remedies, declaratory relief, and narrow prospective non-monetary relief only to the extent legally available and tied to Plaintiff's own payroll, wage-statement, written-computation, correction-payment, and recordkeeping records.

## COUNT I

**NEW YORK LABOR LAW §§ 191 AND 198**

**WEEKLY PAYMENT OF MANUAL WORKER WAGES**

114. Plaintiff repeats and realleges paragraphs 1 through 113 only to the extent relevant to this Count.

115. Plaintiff was a **manual worker** within the meaning of the New York Labor Law.

116. PPL was Plaintiff's **employer or joint employer** for wage-payment purposes.

117. **NYLL § 191(1)(a)** required PPL to pay Plaintiff weekly and not later than seven calendar days after the end of the week in which the wages were earned, unless a statutory exception applied.

118. Plaintiff performed work reflected in PPL's records on **August 19, 2026.**

119. The workweek containing the August 19, 2026 punch ended **August 22, 2026**.

120. PPL's August 27, 2026 voucher credited only **1.25 hours** for the August 19, 2026 punch.

121. PPL's September 9, 2026 voucher later credited an additional **8.75 hours** for the same August 19, 2026 punch.

122. On the face of PPL's own payroll records, PPL ultimately treated the August 19, 2026 punch as **10.00 payable hours** by crediting **1.25 hours** on the August 27 voucher and **8.75 additional hours** on the September 9 voucher.

123. The remaining **8.75 hours** were not paid until **September 9, 2026**.

124. The September 9, 2026 payment was approximately **18 days after** the workweek ended and approximately **11 days after** the seven-calendar-day deadline under **NYLL § 191(1)(a)**.

125. The September 9, 2026 payment was also approximately **13 days after** the August 27, 2026 check date reflected on the August 27 voucher.

126. PPL's late payment of the remaining **8.75 hours** violated **NYLL § 191** unless PPL proves a statutory exception or valid defense.

127. Plaintiff seeks the remedies legally available under the current version of **NYLL § 198** for any proven violation of **NYLL § 191**, including lost interest, statutory relief, costs, and any other relief legally available.

**COUNT II**

**NEW YORK LABOR LAW §§ 195(3) AND 198(1-d)**

**WAGE-STATEMENT AND WRITTEN-COMPUTATION VIOLATIONS**

128. Plaintiff repeats and realleges paragraphs 1 through 113 only to the extent relevant to this Count.

129. PPL was Plaintiff's **employer or joint employer** for wage-statement purposes.

130. **NYLL § 195(3)** required PPL to furnish Plaintiff with a wage statement with every payment of wages.

131. **NYLL § 195(3)** required the wage statement to list the dates of work covered by the payment, the rate or rates of pay, gross wages, deductions, net wages, and other required information.

132.**NYLL § 195(3)** also required PPL, upon Plaintiff's request, to provide an explanation in writing of how wages were computed.

133.PPL's September 9, 2026 voucher listed the pay period as **August 23, 2026 through August 29, 2026**.

134.The punch detail on that same voucher identified **August 19, 2026**.

135.August 19, 2026 belonged to the prior **August 16, 2026 through August 22, 2026** pay period.

136.The September 9, 2026 wage statement was inaccurate, unclear, or incomplete because it placed or appeared to place an August 19 punch under the August 23 through August 29 pay-period label.

137.The September 9, 2026 wage statement did not clearly explain why the August 19 punch was split across two vouchers.

138.The September 9, 2026 wage statement did not clearly explain what workweek the September 9 correction covered.

139.The September 9, 2026 wage statement did not clearly explain whether the September 9 payment fully corrected the delayed **8.75 hours**.

140.Plaintiff requested a written explanation, computation, or reconciliation.

141.PPL did not provide Plaintiff with a complete written computation identifying the specific pay period, hours, rate, calculation, approval record, correction record, wage-statement basis, or reason for the **$162.25 payment**.

142.The wage-statement defect and failure to provide a complete written computation caused Plaintiff concrete injury.

143. Specifically, Plaintiff could not determine from the wage statement itself what workweek the September 9 payment covered, whether the remaining **8.75 hours** for August 19 had been fully corrected, why the same August 19 punch was split across two wage statements, and whether any additional wages or correction remained due.

144. Plaintiff was required to spend time and effort seeking a written computation and reconciliation that PPL did not provide.

145. The violation impaired Plaintiff's ability to verify, challenge, and reconcile his wages promptly.

146. This was not a merely technical violation because the wage statement prevented Plaintiff from understanding and verifying the correction payment without further written explanation from PPL.

147. Plaintiff seeks the remedies available under **NYLL § 198(1-d)** and any other relief legally available for proven violations of **NYLL § 195(3)**, subject to all statutory requirements and defenses.

**COUNT III**

**FAIR LABOR STANDARDS ACT**

**PROMPT PAYMENT OF WAGES**

148. Plaintiff repeats and realleges paragraphs 1 through 113 only to the extent relevant to this Count.

149. PPL was Plaintiff's **employer or joint employer** within the meaning of the **Fair Labor Standards Act**.

150. Plaintiff was an employee covered by the **Fair Labor Standards Act**.

151. Upon information and belief, PPL was an enterprise engaged in commerce within the meaning of the **Fair Labor Standards Act**.

152. Upon information and belief, PPL's annual gross volume of sales made or business done exceeded **$500,000** during the relevant period.

153. Upon information and belief, PPL had employees handling payroll systems, electronic communications, direct deposits, banking transmissions, telephone systems, records, materials, or instrumentalities that moved in interstate commerce.

154. In the alternative, Plaintiff was individually engaged in commerce or in the production of goods for commerce within the meaning of the **Fair Labor Standards Act** because his work, payroll processing, direct deposits, electronic records, telephony systems, and related communications used instrumentalities of interstate commerce.

155. The FLSA requires covered wages to be paid promptly.

156. Plaintiff alleges that the August/September 2026 event was not a routine payroll lag or ordinary administrative delay, but an unexplained split of a same-day punch across two vouchers, followed by a later correction payment after written notice and without a complete written computation.

157. PPL's own records reflected a same-day August 19 punch that was credited only **1.25 hours** on the August 27 voucher and later credited an additional **8.75 hours** on the September 9 voucher.

158. PPL issued the additional **8.75-hour** payment after Plaintiff raised the discrepancy in writing.

159. PPL placed the September 9 payment under a pay-period label that did not match the August 19 punch detail.

160. PPL did not provide Plaintiff with a complete written computation explaining the correction.

161. The delay and lack of explanation were objectively unreasonable under the circumstances, subject to proof.

162. Plaintiff seeks unpaid wages if any remain due, damages, interest, liquidated damages where legally available, costs, and other relief available under the **FLSA**.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendant **Public Partnerships LLC** and grant the following relief:

A. A declaration that Defendant violated Plaintiff's rights under the **New York Labor Law** and, if proven, the **Fair Labor Standards Act**;

B. Damages for delayed wages, unpaid wages if any remain due, and any other wage-related damages proven at trial;

C. The remedies legally available under **NYLL § 198** for any proven violation of **NYLL § 191**, including lost interest and any other legally available statutory relief;

D. The remedies legally available under **NYLL § 198(1-d)** for any proven violation of **NYLL § 195(3)**;

E. Any damages, liquidated damages, interest, or other relief legally available under the **FLSA** if Plaintiff proves a FLSA violation;

F. Prejudgment and post-judgment interest to the extent legally available;

G. **Costs and disbursements** legally available to a prevailing party;

H. Narrow prospective non-monetary relief, if legally available, requiring PPL to provide accurate wage statements and written computations for Plaintiff's own payroll and correction-payment records;

I. Narrow record-correction or reconciliation relief, if legally available, tied to Plaintiff's own August 19, 2026 punch, September 9, 2026 payment, wage statement, and written-computation request;

J. Such other and further relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: Brooklyn, New York

**September 24, 2026**

Respectfully submitted,

/s/ Daryl Stephen

**Daryl Stephen**

Plaintiff Pro Se

1316 Sterling Place

Brooklyn, NY 11213

Tel.: 917-547-2145

Email: ds027c@icloud.com

# **Exhibit B**

Exhibit B

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF NEW YORK**

————————————————————X

**DARYL STEPHEN**,

Plaintiff,

-against- No. **1:25-cv-03895 (NRM)(LKE)**

**PUBLIC PARTNERSHIPS LLC**,

Defendant.

————————————————————X

**SUMMARY OF PROPOSED AMENDMENTS TO SECOND AMENDED AND SUPPLEMENTAL COMPLAINT**

Plaintiff **Daryl Stephen**, proceeding pro se, respectfully submits this **Summary of Proposed Amendments** in support of his motion for leave to file the proposed **Second Amended and Supplemental Complaint** pursuant to Federal Rules of Civil Procedure **15(a)(2)** and **15(d).**

This summary is submitted to assist the Court and Defendant in identifying the principal changes in the proposed pleading. Plaintiff is pro se and understands that Local Civil Rule **15.1(a)** does not require a pro se litigant to submit a redline. This summary is not intended to replace the proposed pleading itself.

## I. PURPOSE OF THE PROPOSED AMENDMENT

The proposed **Second Amended and Supplemental Complaint** narrows and clarifies the operative pleading. It focuses the case on Defendant **Public Partnerships LLC's** own **payroll**, **wage-payment**, **wage-statement**, **written-computation**, **correction-payment**, **recordkeeping**, and **support** functions.

The proposed pleading does not create a new lawsuit. It concerns the same employment relationship, the same CDPAP personal-assistant work, the same PPL payroll and timekeeping systems, and the same wage-payment and wage-statement issues already raised in this action.

The proposed pleading also supplements the case with related events that occurred after the **First Amended Complaint**, including the **August 19, 2026 through September 9, 2026** payroll sequence.

## II. CORE SUPPLEMENTAL EVENT ADDED

The proposed pleading adds a specific later payroll event involving an **August 19, 2026** punch and a later **September 9, 2026** payment.

The proposed pleading alleges that:

1. PPL's **August 27, 2026** voucher, **Voucher No. 11499289**, listed the pay period as **August 16, 2026 through August 22, 2026.**
2. That voucher showed an **August 19, 2026** punch from **1:59 p.m. to 11:59 p.m.**

3. The August 27 voucher credited only **1.25 hours** for that August 19 punch.
4. Plaintiff raised a written payroll discrepancy with PPL.
5. PPL responded that, "[u]pon review," Plaintiff had "a payment ready to be disbursed 9/3/26."
6. Plaintiff later received a separate direct deposit on or about **September 9, 2026** in the net amount of **$162.25.**
7. PPL's **September 9, 2026** voucher, **Voucher No. 11676508**, credited **8.75 additional hours**, **$180.69 gross**, and **$162.25 net** connected to the same **August 19, 2026** punch.
8. The **1.25 hours** on the August 27 voucher and the **8.75 hours** on the September 9 voucher total **10.00 hours.**
9. The September 9 voucher listed the pay period as **August 23, 2026 through August 29, 2026**, even though the punch detail identified work performed on **August 19, 2026.**
10. The proposed pleading alleges that the September 9 voucher did not accurately list the **dates of work covered by the payment** and did not provide a complete written computation explaining the correction.

## III. CLAIMS CLARIFIED OR NARROWED

The proposed pleading clarifies and narrows the claims to focus on the strongest wage-and-hour issues.

### A. NYLL § 191 Weekly-Payment Claim

The proposed pleading adds a focused **NYLL § 191** claim based on the alleged late payment of the remaining **8.75 hours** connected to the August 19, 2026 punch.

The proposed pleading alleges that:

1. Plaintiff was a **manual worker**;
2. PPL was Plaintiff's **employer or joint employer** for wage-payment purposes;
3. The August 19, 2026 punch belonged to the **August 16, 2026 through August 22, 2026** workweek;
4. The workweek ended on **August 22, 2026**;
5. The seven-calendar-day deadline under **NYLL § 191(1)(a)** was **August 29, 2026**, absent a statutory exception;
6. PPL did not pay the remaining **8.75 hours** until **September 9, 2026**;
7. The September 9 payment occurred approximately **18 days after** the workweek ended and approximately **11 days after** the seven-calendar-day deadline; and
8. Plaintiff seeks only the remedies legally available under **NYLL § 198** for any proven § 191 violation.

**B. NYLL § 195(3) Wage-Statement and Written-Computation Claim**

The proposed pleading adds a focused **NYLL § 195(3)** claim based on the September 9, 2026 voucher and PPL's alleged failure to provide a complete written computation.

The proposed pleading alleges that:

1. The September 9 voucher listed the pay period as **August 23, 2026 through August 29, 2026**;
2. The punch detail on that same voucher identified **August 19, 2026**;
3. August 19, 2026 was not within the pay period listed on the September 9 voucher;
4. The voucher therefore did not accurately identify the **dates of work covered by the payment**;
5. Plaintiff could not determine from the wage statement itself what workweek the September 9 payment covered, why the same August 19 punch was split across two vouchers, whether the delayed **8.75 hours** had been fully corrected, or whether any additional wages or correction remained due;
6. Plaintiff requested a written computation, explanation, or reconciliation; and
7. PPL did not provide a complete written computation.

The proposed pleading also alleges concrete practical and informational injury from the inaccurate or unclear wage statement and lack of written computation.

**C. FLSA Prompt-Payment Claim**

The proposed pleading preserves a **Fair Labor Standards Act** prompt-payment claim.

The proposed pleading alleges that PPL was Plaintiff's **employer or joint employer** under the FLSA, that PPL was an enterprise engaged in commerce, and that the August/September 2026 event was not a routine payroll lag or ordinary administrative delay.

The proposed pleading alleges that PPL's own records reflected a same-day August 19 punch that was credited only **1.25 hours** on the August 27 voucher and later credited **8.75 additional hours** on the September 9 voucher, after Plaintiff raised the discrepancy in writing and without a complete written computation.

## IV. RULE 19 AND CONSUMER-ROLE CLARIFICATION

The proposed pleading clarifies that Plaintiff seeks relief from **PPL only** for PPL's own payroll, wage-payment, correction-payment, wage-statement, written-computation, recordkeeping, deduction, tax, and support functions.

The proposed pleading does not seek to impose liability on PPL for the **Consumer's** independent care-management duties, scheduling duties, or direct supervision of care.

The proposed pleading also alleges that complete relief can be awarded between Plaintiff and PPL because the claims concern PPL's own payroll and wage-statement obligations.

## V. MANUAL-WORKER ALLEGATIONS CLARIFIED

The proposed pleading includes more specific allegations supporting Plaintiff's **manual-worker** status under the New York Labor Law.

The proposed pleading alleges that Plaintiff performed hands-on personal-assistance and home-care work, including physical caregiving and physical labor such as mobility assistance, fall prevention, repositioning, walking assistance, meal and hydration

assistance, household support, laundry, cleaning, and related personal-assistance tasks.

The proposed pleading alleges that more than **25 percent** of Plaintiff's work consisted of physical labor.

## VI. PAPER-TIMESHEET EXCEPTION FACTS ADDED OR CLARIFIED

The proposed pleading adds or clarifies allegations concerning PPL's **paper-timesheet exception** texts.

The proposed pleading alleges that PPL sent Plaintiff text messages confirming paper-timesheet exceptions, including approvals covering:

1. **May 29, 2025 through August 29, 2025**;
2. **July 3, 2025 through October 3, 2025**;
3. **September 28, 2025 through December 28, 2025**; and
4. **December 21, 2025 through December 21, 2026**.

The proposed pleading does not allege that the existence of a paper-timesheet exception alone proves that every electronic or telephonic method malfunctioned. Instead, it alleges that those communications show PPL's notice of Plaintiff's reporting issues and PPL's control or administration of the fallback process.

## VII. THEORIES REMOVED OR NOT INCLUDED

The proposed pleading removes or avoids several theories and materials that are not necessary to the narrowed wage-and-hour claims.

The proposed pleading does **not** include:

1. A claim under the **National Labor Relations Act**;
2. Reliance on the **September 24, 2026 NLRB election notice**;
3. Any request for this Court to decide representation, election, certification, unfair-labor-practice, or union-representation issues;
4. A present allegation that the September 9, 2026 correction failed to credit **Safe and Sick Leave** or **PTO**;
5. A broad systemwide redesign request;
6. A request for immediate preliminary injunctive relief;
7. Generic tort claims;
8. Tax-damages theories; or
9. Attorney's-fee language for Plaintiff as a pro se litigant.

The proposed pleading seeks only damages, statutory remedies, declaratory relief, costs and disbursements where available, and narrow prospective or record-correction relief tied to Plaintiff's own payroll, wage-statement, written-computation, correction-payment, and recordkeeping records.

## VIII. RELIEF REQUESTED IN THE PROPOSED PLEADING

The proposed pleading requests relief including:

1. A declaration that PPL violated Plaintiff's rights under the **New York Labor Law** and, if proven, the **Fair Labor Standards Act**;

2. Damages for delayed wages, unpaid wages if any remain due, and other wage-related damages proven at trial;
3. Remedies legally available under **NYLL § 198** for any proven **NYLL § 191** violation;
4. Remedies legally available under **NYLL § 198(1-d)** for any proven **NYLL § 195(3)** violation;
5. Any damages, liquidated damages, interest, or other relief legally available under the **FLSA** if Plaintiff proves a FLSA violation;
6. Prejudgment and post-judgment interest to the extent legally available;
7. **Costs and disbursements** legally available to a prevailing party;
8. Narrow prospective non-monetary relief requiring accurate wage statements and written computations for Plaintiff's own payroll and correction-payment records, if legally available; and
9. Narrow record-correction or reconciliation relief tied to Plaintiff's own August 19, 2026 punch, September 9, 2026 payment, wage statement, and written-computation request, if legally available.

## IX. CONCLUSION

The proposed **Second Amended and Supplemental Complaint** narrows the case, removes unnecessary or distracting theories, adds related post-pleading facts, and focuses the claims on PPL's own alleged wage-payment, wage-statement, written-computation, correction-payment, and recordkeeping conduct.

Dated: Brooklyn, New York

**September 24, 2026**

Respectfully submitted,

/s/ Daryl Stephen

**Daryl Stephen**

Plaintiff Pro Se

1316 Sterling Place

Brooklyn, NY 11213

Tel.: 917-547-2145

Email: ds027c@icloud.com

# **Exhibit C**

Exhibit C

Thank you

+1 (866) 709-2810

Jul 1, 2025 at 1:04 PM

Your paper timesheet exception request has been temporarily granted from 05/29/25 to 08/29/25. For more information, check the email address on file with PPL.

Jul 2, 2025 at 3:33 PM

Your paper timesheet exception request has been temporarily granted from 05/29/25 to 08/29/25. For more information, check the email address on file with PPL.

help.

+1 (866) 709-2810

Aug 11, 2025 at 11:02 AM

Your paper timesheet exception request has temporarily granted from 7/3/25 to 10/3/25. For more information, check the email address on file with PPL.

Thu, Oct 2 at 11:21 AM

Your paper timesheet exception request has been temporarily granted from 09/28/25 to 12/28/25. For more information, check the email address on file with PPL.

**+1 (866) 709-2810**

Sun, Dec 21 at 9:55 AM

Your paper timesheet exception has been granted from 12/21/25 through 12/21/26. Pre-populated timesheets will be mailed to you soon. Thank you! PPL

+1 (866) 709-2810 ›

Sun, Jan 25 at 12:09 PM

Reminder – a paper timesheet exception was previously granted from 12/21/25 through 12/21/26. Thank you! PPL

**+1 (866) 709-2810 ›**

Mon, Jun 29 at 8:40 AM

Reminder – a paper timesheet exception was previously granted from 12/21/25 through 12/21/26. Thank you! PPL

+1 (866) 709-2810 ›

Mon, Aug 24 at 1:27 PM

Reminder, A PTE Request was previously granted from 12/21/2025 to 12/21/2026. Please submit a new request closer to the expiration date. Thank you! - PPL

+1 (866) 709-2810

CDPAP fac
our short survey: https://hubs.ly/Q04vjdmj0

Hello Daryl Stephen , PPL is introducing a new scorecard feature in Time4Care to give you a clear & simple view of EVV compliance status. Learn more: https://hubs.ly/Q04wV-x70

Yesterday 8:56 AM

Reminder, A PTE Request was previously granted from 12/21/2025 to 12/21/2026. Please submit a new request closer to the expiration date. Thank you! - PPL

# **Exhibit D**

Exhibit D

**Public Partnerships Home Care LLC**
17 Plaza Drive
Latham, NY 12110

**Voucher Date** 09/09/2026

**Voucher Number** 11676508

******* This is not a check *******

**Direct Deposit Amount** $ *******162.25

[redacted]

Pay to the order of: **Daryl Stephen**

[redacted]

**Public Partnerships Home Care LLC**
17 Plaza Drive
Latham, NY 12110
833-247-5346

Daryl Stephen

Voucher Number: 11676508

| | | | |
|---|---|---|---|
| Employee Id | [redacted] | Check Date | **09/09/2026** |
| Hire Date | **04/03/2025** | Period Begin | **08/23/2026** |
| Employee Status | **A** | Period End | **08/29/2026** |

## Pay Details

| Earnings | Hours | Rate | Amount | Shift | YTD |
|---|---|---|---|---|---|
| Regular | 8.75 | 20.65 | 180.69 | | [redacted] |
| Safe and Sick Leave | | | 0.00 | | |
| Training | | | 0.00 | | |
| Unpaid Sick Time | | | 0.00 | | |
| Holiday Base | | | 0.00 | | |
| Holiday Premium | | | 0.00 | | |
| Spread of Hours | | | 0.00 | | |
| | **8.75** | | **180.69** | | |

| Taxes | Taxable | Amount | YTD |
|---|---|---|---|
| Federal Income Tax | [redacted] | | |
| Social Security | | | |
| Medicare | | | |
| NYS Income Tax | | | |
| NY Paid Leave | | | |
| NY Disability | | | |
| NYC Income Tax | | | |

## Other Info

| Direct Deposits | Amount |
|---|---|
| J.P. MORGAN CHASE BA | [redacted] |

| Time Off Balances | Available Balance | Total Balance |
|---|---|---|
| Safe & Sick Leave (PTO) | [redacted] | |
| Unpaid Sick (NYC Cases Only) | | |

## Statement Summary

| | |
|---|---|
| Gross Pay | [redacted] |
| Federal Taxes | |
| State and Local Taxes | |
| Other Deductions | |
| Net Pay | |
| Direct Deposits | |
| Net Check | |

| Punches | Day | In | Out | Hours | Patient |
|---|---|---|---|---|---|
| 08/19 | Wed | 01:59PM | 11:59PM | 8.75 | [redacted] |

## Wage Parity Statement

| Wage Parity | Hours | Rate | Amount |
|---|---|---|---|
| Gross Liability | 8.75 | 22.19 | 194.16 |
| Cash Paid | 8.75 | 20.65 | 180.69 |
| WP Health and/or 401(a) | 8.75 | 0.85 | 7.44 |
| WPSSL | 8.75 | 0.69 | 6.04 |
| **Total Cash and Benefits** | | | **194.17** |

# **Exhibit E**

Exhibits E

From: Foster, Walter WalterFoster@cozen.com
Subject: RE: Follow-Up Regarding Direct Communications from PPL Staff
Date: Aug 1, 2025 at 11:23:34 AM
To: ds027c@icloud.com, Agresti, Janice Sued JAgresti@cozen.com

---

Mr. Stephen – I work with Janice Agresti on this matter and wanted to have a phone call with you about the below today if you have time. Please let me know if you are free for a telephone call at say 3:00 today or at 4:00. We do need to clarify with you the means of communication and the handling of ongoing timesheet issues and guidance. Please let me know if we can do a call at 3:00 and also let me know the best telephone number to reach you. Thank you for your attention to this matter.

Walter

COZEN O'CONNOR
**Walter M. Foster**
**Shareholder | Cozen O'Connor**
200 State Street, Suite 1105 | Boston, MA 02109
P: 617-849-5012 C: 978-760-1323
Email | Map | cozen.com

---

**From:** ds027c@icloud.com <ds027c@icloud.com>
**Sent:** Tuesday, July 29, 2025 1:05 PM
**To:** Agresti, Janice Sued <JAgresti@cozen.com>
**Cc:** Foster, Walter <WalterFoster@cozen.com>
**Subject:** Follow-Up Regarding Direct Communications from PPL Staff

****EXTERNAL SENDER****

Dear Ms. Agresti,

Thank you for the clarification. I appreciate your reiteration that discussions regarding the lawsuit should not be directed to PPL staff and must go through counsel.

However, I must again place on record that during the July 29 calls from a PPL staff member named “Billy,” the questions asked went beyond general support and directly touched on issues central to the claims raised in my complaint — including specific questions about my clock-in methods, device used, phone number, timing of approvals, and allegations of late submission.

I stated on each of the three calls that I could not discuss matters related to the legal proceeding, but the individual continued to pursue those lines of questioning. I am concerned that this contact — particularly after your prior directive — could be construed as an attempt to undermine or pre-litigate issues outside the court.

Moving forward, I will only correspond regarding payroll or EVV technical issues in writing, and only when it does not relate to matters currently in litigation. Please ensure no further phone contact is made, and that any needed communication is done via email.

Sincerely,

Daryl Stephen

On Jul 29, 2025, at 10:14 AM, Agresti, Janice Sued <JAgresti@cozen.com> wrote:

Dear Mr. Stephen,

As I mentioned in my previous email, it is our understanding that PPL's escalations team has been working with you to resolve your issues with submitting your time. They are dedicated to assisting you in understanding how to submit your time correctly and clarify your misunderstandings. Please keep working with them to resolve that matter.

Just to reiterate, the only restriction is that you should not discuss the **lawsuit** directly with PPL. Any discussions related to the **lawsuit** should be going through counsel.

Thank you.

Regards,
Janice

COZEN O'CONNOR

**Janice Sued Agresti**
**Member I Cozen O'Connor**
3 WTC, 175 Greenwich Street 55th Floor I New York, NY 10007
P: 212-453-3978 F: 646-588-1558
Email I Map I cozen.com

*Janice Sued Agresti is admitted to practice in New York, New Jersey and Pennsylvania.*

**From:** ds027c@icloud.com <ds027c@icloud.com>

**Sent:** Tuesday, July 29, 2025 8:32 AM
**To:** Agresti, Janice Sued <JAgresti@cozen.com>
**Cc:** Foster, Walter <WalterFoster@cozen.com>
**Subject:** Re: Upcoming Combined Wage Payment – Urgent Compliance Issue

****EXTERNAL SENDER****

Subject: Unauthorized Contact and Documentation of July 29 Call

Dear Ms. Agresti,

I am writing to formally notify you that today, July 29, 2025, at approximately 1:00 PM, I received three separate phone calls from an individual identifying himself as "Billy" from PPL. Despite your instruction that all communications regarding this matter be directed solely to you and Mr. Walter, this individual repeatedly attempted to engage me in a discussion about the legal issues I have already raised in this case.

During the call(s), I informed him each time that I am involved in a legal proceeding and could not discuss the matter outside of court or legal counsel. Despite this, he continued asking pointed questions about my time submissions, EVV usage, client approvals, and technical details directly related to my claims — all of which appeared aimed at eliciting self-incriminating statements.

This violates your own directive as legal counsel. I ask that you ensure no further direct contact is made to me by any PPL personnel regarding this matter. I am documenting this event as part of my ongoing record of retaliation and procedural irregularities.

If PPL's legal counsel or escalation team wishes to communicate with me regarding payroll or EVV issues, those communications must go through you, per your instructions. I remain willing to cooperate through proper legal channels. Furthermore as previously stated, I remain open to resolving this matter pre-discovery for

$250,000, but I am fully prepared to proceed in court if a fair resolution cannot be reached.

Sincerely,
Daryl Stephen

On Jul 28, 2025, at 9:29 PM, Agresti, Janice Sued <JAgresti@cozen.com> wrote:

Dear Mr. Stephen:

Thank you. We are in receipt of your email.

As an initial matter, we ask that you immediately ***cease and desist any communications directly to PPL regarding your lawsuit. All future correspondence regarding your lawsuit should be directed to Walter and me only,*** as we are counsel for PPL in this matter.

As to your email below,  we have looked into this and have been informed that the issue stems from you not submitting your time properly. I have been informed that PPL's escalation team has been trying to work with you on this.

Lastly, as to your email regarding when we are submitting our response to your lawsuit, PPL will be responding in due course in accordance with the rules of the Court.

Regards,
Janice

COZEN O'CONNOR
**Janice Sued Agresti**
**Member | Cozen O'Connor**
3 WTC, 175 Greenwich Street 55th Floor | New York, NY 10007
P: 212-453-3978 F: 646-588-1558
Email | Map | cozen.com

---

**From:** ds027c@icloud.com <ds027c@icloud.com>
**Sent:** Monday, July 28, 2025 10:56:11 AM
**To:** Agresti, Janice Sued <JAgresti@cozen.com>; Foster, Walter <WalterFoster@cozen.com>
**Cc:** Deborah Drexler <ddrexler@pplfirst.com>; pplhelp@pplfirst.com <pplhelp@pplfirst.com>; NY CD PAP <NYCDPAP@pplfirst.com>; privacy@pplfirst.com <privacy@pplfirst.com>; NY CD PAP <nycdpap@pplfirst.com>
**Subject:** Upcoming Combined Wage Payment – Urgent Compliance Issue

**EXTERNAL SENDER**

Dear Ms. Agresti,

I'm writing to notify you that, due to the continued issues with PPL's EVV system and the Saturday 11:59 PM cutoff, I am at risk of receiving a combined paycheck this Thursday, July 31st, for the pay periods of July 13–19 and July 20–26.

This would constitute an additional delayed wage payment — the very issue at the center of my federal complaint.

I am bringing this to your attention now to give PPL an opportunity to correct the issue before further harm occurs. Please confirm whether action will be taken to prevent the issuance of a combined payment and ensure timely, separate compensation per pay period.

I am also copying Ms. Drexler for continuity, given her past involvement in this matter.

Thank you,
Daryl Stephen
Ds027c@icloud.com
917-547-2145

***Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If the reader or recipient of this communication is not the intended recipient, an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient, or you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege.***

***Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If the reader or recipient of this communication is not the intended recipient, an employee or agent of the intended recipient who is responsible for delivering it to the intended recipient, or you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege.***

***Notice: This communication, including attachments, may contain information that is confidential and protected by the attorney/client or other privileges. It constitutes non-public information intended to be conveyed only to the designated recipient(s). If the reader or recipient of this communication is not the intended recipient, an employee or agent of the***

***intended recipient who is responsible for delivering it to the intended recipient, or you believe that you have received this communication in error, please notify the sender immediately by return e-mail and promptly delete this e-mail, including attachments without reading or saving them in any manner. The unauthorized use, dissemination, distribution, or reproduction of this e-mail, including attachments, is prohibited and may be unlawful. Receipt by anyone other than the intended recipient(s) is not a waiver of any attorney/client or other privilege.***